### Ross *v.* Cooley.

LITTLE, J.   1. As a general rule, possession of personalty by an alleged donor, after he has executed an instrument purporting to evidence a gift of the property, is a badge of fraud, which, in proceedings instituted by a judgment creditor of the former to subject the property to his debt, must be satisfactorily explained in order to uphold the validity of the gift.

2. The property of one person can not ordinarily be made subject to the payment of the debts of another.   The right of a creditor to subject the property of one having title thereto, to the debt of another, on the theory that credit was extended to the possessor upon the faith of his apparent ownership, rests on purely equitable grounds, the underlying principle of which is, that the owner, by concealing his title, permitted the person in possession and use of the property to commit a fraud on the creditor.

3. When it is made to appear that a father, owing no debts at the time, by an instrument in writing conveyed title to personal property to his minor son, and delivered the instrument to the donee, and kept possession of the property for him, and in the regular course of business, more than a year thereafter, contracted a debt which he was unable to pay, the question whether such property is subject to the debt depends on the bona fides of the gift, and is not affected by the claim that credit was extended to the father on the faith of his owning such property, the creditor not having taken a lien. *Dodd* v. *Bond*, 88 *Ga.* 355.

4. The father being the proper custodian of property belonging to his minor child, possession of such by him is not indicative of fraud. *Hargrove* v. *Turner*, 112 *Ga.* 134, and authorities there cited.

5. A verdict for the claimant was a proper one in this case, and the judge committed no error in overruling the motion for a new trial.
          *Judgment affirmed.   All the Justices concurring.*

Argued June 12, — Decided July 22, 1901.

Levy and claim.    Before Judge Norwood.    City court of Savannah.    August 9, 1900.

An execution against Martin Cooley was levied on an engine and boiler as his property, and a claim to the property was interposed by Martin Cooley Jr., his son, who claimed title by virtue of a gift evidenced by a writing signed by the defendant, by which the son was given "as a New Year present" one engine and boiler, one pile-driving hammer, and "all my ropes, blocks, tools of every description." This writing was dated January 1, 1896, and the judgment on which the execution was based was rendered in 1897. At the trial the defendant testified: "I made that bill of sale to my son on account of my health, and for fear that I might not be able to do any more work. It was given to him to sell or do anything he chose, in order to help pay his way through the University of Pennsylvania, as I had no other means at my disposal. He was at the university then, and I sent the paper on to him. Prior to the time of signing the bill of sale I was in the contracting business. At the time I signed the bill of sale I was unable to do anything, because I was afflicted with rheumatism. The contract on which the suit of the plaintiff against me was based was made in July or August, 1896. When I made the deed of gift I owed nobody a cent. I had no property left after I made the deed of gift. I am trustee of an estate out of which I get a living. My son was never engaged in the contracting business. Since I made the contract with the plaintiff I have done no more contracting work. The contract I made with Ross [plaintiff] for the hire of an engine was to carry out a contract that I had at that time. I did not inform Mr. Ross or anybody else that I had turned over all my property to my son. . . I presume that myself and my son were all the people who knew of it, except my family. . . He was one of my minor children. With his consent I used the property in my business after I had given it to him. It remained in my possession as his agent. I hired an engine, boiler, and hammer from Mr. Ross, and he gave me credit as to the payment. I think if I had told Mr. Ross that I had given away all my property he would still have hired me the engine. . . I would have paid him if reverses had not come up." The claimant testified: "I am the owner of the engine and boiler, pile-driving hammer, and apparatus connected therewith, that was levied on under execution in this matter. I

became the owner of this engine in January, 1896, it being given to me by my father. . . The rental of the pile-driving hammer has been placed in my father's hands, acting as my agent and for my advantage. . . To the best of my knowledge the engine has been practically idle since it was turned over to me, until recently when it was rented to John Rourke & Son, of Savannah, Ga., on a written agreement with my father as agent for me. . . The sale of the engine is also in my father's hands at his discretion. . . the proceeds to go to me." For the plaintiff in execution there was evidence that, when he rented an engine and pile-driver to the defendant in 1896, he extended credit to the defendant on the faith of the defendant's supposed ownership of the contracting plant, pile-driving engine, etc.; that the defendant was doing some work at Port Royal, and told the plaintiff's representative that he (defendant) had an engine and boiler over there; that the defendant was in possession of the property mentioned; and that no inquiries were made of him by the plaintiff's agent as to whether he owned any property. John Rourke testified that he hired a pile-driver and engine from the defendant after January, 1896, that they were in his (Rourke's) possession when the levy was made, and that he had never heard before the trial of this case that the defendant was not the owner of the property. Others testified as to their not having heard that the property belonged to the claimant.

There was a verdict in favor of the claimant. The plaintiff in execution excepted to the overruling of his motion for a new trial, the grounds of which are, that the verdict is contrary to law and evidence, and that the court erred in charging the jury as follows: (a) "On the other hand, if you should find that the possession of Martin Cooley, Senior, was genuine and bona fide, that there was no intent on his part to take advantage of any purchaser or creditor existing, or that might subsequently become a creditor, that would remove the badge of fraud, and you would be justified in finding for the defendant. You are, therefore, to determine the question from that state of facts. Look at all the circumstances from the date of gift up to the time of the trade between the plaintiff and Martin Cooley, Senior, and determine whether there was any intent upon the part of Martin Cooley, Senior, to take advantage of any creditor or purchaser; and if you find that there was not, then your verdict will be for the claimant." (b) "What occurred between Martin Cooley,

Senior, and P. Sanford Ross is not in this case at all. I mean prior· to the time the judgment was taken."

*Lester & Ravenel,* for plaintiff. *W. P. LaRoche,* contra.