### NATIONAL CASKET COMPANY OF GEORGIA *v.* CLARK *et al.*

No. 10937. AUGUST 8, 1935.

*Fred Powell,* for plaintiff. *Hay & Gainey,* for defendants.

BELL, Justice. The bill of exceptions complains only of the refusal of the court to appoint a receiver, as prayed by the plaintiff, in a suit by the National Casket Company of Georgia against Mrs. C. N. Clark and her son, J. Laurin Clark. The order refusing to appoint a receiver stated that it was not passed in the exercise of discretion, but that the petition was denied "simply because the law seems to demand it under the evidence and under the record." So, the question for decision is whether or not the appointment of a receiver would have been authorized in the exercise of discretion. Under the facts of the case, as we shall presently show, this question must be answered in the negative.

In 1931, Holder & Clark Funeral Directors Inc. was engaged in the undertaking business in Thomasville, Georgia, J. Laurin Clark being a member of the corporation. The company was indebted to Mrs. C. N. Clark and Mrs. J. M. Spence in the aggregate sum of $7000, the indebtedness being secured by a mortgage on numerous articles of personalty consisting of its equipment and stock in trade. The company was also indebted to the present plaintiff, the National Casket Company of Georgia, which indebtedness was unsecured. In order that the Holder & Clark corporation might obtain

further credit from the casket company, Mrs. Clark and Mrs. Spence agreed in writing with the casket company "to subordinate their mortgage" to the existing claim of the casket company and to any sums which might thereafter "become due and owing" to it "by said Holder & Clark in the course of business between them." This agreement and the mortgage were both duly attested and recorded. Thereafter the Holder & Clark corporation increased its indebtedness to the casket company to about $900, after which it was adjudicated a bankrupt. In some manner not disclosed by the record Mrs. Spence has now disappeared from the scene, and in the further transactions Mrs. Clark is treated by the casket company as sole owner of the legal title to the mortgage. While the evidence in regard to subsequent happenings was in some respects conflicting, the following narrative will present the case as favorably to the plaintiff as it can be stated under the pleadings and the evidence:.

The casket company having no lien *as against the bankrupt,* and relying upon the agreement of Mrs. Clark to subordinate the mortgage to its claim, co-operated with her in obtaining a release of the mortgaged property from the proceedings in the court of bankruptcy. As a result, the trustee in bankruptcy was directed by the referee to deliver the property to the casket company. The mortgage, however, was held by Mrs. Clark; and so, after receiving the property from the trustee, the casket company delivered it to Mrs. Clark, "that she might foreclose upon and sell the same for the benefit of the National Casket Company of Georgia, and for no other purpose." The mortgage was accordingly foreclosed in the name of Mrs. Clark as mortgagee, in the city court of Thomasville. At the sale Mrs. Clark became the purchaser and as plaintiff in execution acquired the property from the levying officer without payment of the purchase-price. The attorney who represented the casket company testified that "she went through a pretended sale, . . but concealed from the sheriff the fact that she was only a nominal plaintiff, and concealed from the representative of the National Casket Company of Georgia that she did not intend to pay for the said property which she pretended to purchase." The attorney further testified that both Mrs. Clark and her son J. Laurin Clark had admitted "their insolvency and their inability to pay the lien upon this property,"

as claimed by the plaintiff. After purchasing the property at the foreclosure sale Mrs. Clark delivered it to her son, who formed a partnership with J. W. Park for the purpose of engaging in the undertaking business. The property in question became a part of the assets of the new firm, Park in the formation of the partnership having purchased a half interest therein. In regard to this transaction Park testified, in part, as follows: "Said property was actually in the possession of J. Laurin Clark, and deponent's information was that the property belonged to said Clark. He had no knowledge that National Casket Company claimed any interest in said property, bought it in good faith for value and without any notice or knowledge of claim thereon by National Casket Company." Subsequently the partnership of "Clark & Park" executed a bill of sale of the property to G. W. Swift for a present loan of $250 in money, which "said loan was made in good faith, [and] without notice" of the plaintiff's claim. The record of the foreclosure proceedings in the city court of Thomasville was introduced in evidence, and showed "that under an order of the judge the property was sold, on Feb. 8, 1935, to Mrs. C. N. Clark for the sum of $925; that $28.69 was used to pay cost and the balance of $896.31 paid to Mrs. C. N. Clark."

In the present suit the plaintiff prayed for a judgment for damages against Mrs. Clark for the alleged violation of her agreement to foreclose the mortgage for the benefit of the casket company, that the court appoint a receiver to seize and hold the property pending trial, and that the plaintiff's "equitable lien be preserved." The petition contained allegations as to probable injury and damage to the property, and as to the likelihood that it would not be forthcoming to answer the plaintiff's claim; but there was no evidence to sustain these averments. Cf. *West* v. *Mercer*, 130 *Ga.* 357 (60 S. E. 859). The plaintiff contends that the agreement of Mrs. Clark to "subordinate" the mortgage to its claim constituted an equitable assignment and gave to it the equitable title to the mortgage. On the other side, it is insisted that the agreement merely gave to the plaintiff the right to obtain a mortgage or other security directly from the debtor, to which the prior mortgage would be inferior; and that since the plaintiff failed to do this, it is without a lien of any sort. The plaintiff further contends that the order of the referee adjudicated the superiority

of its claim. The plaintiff, however, did not stand upon this order, and did not seek to foreclose the mortgage in equity or otherwise in its own name, but consented for Mrs. Clark to institute the foreclosure proceedings in her own name as mortgagee; and in view of these and other facts, we do not deem it necessary to determine just what were the rights of these parties under the original contract between them, or under the subsequent order of the referee. "The power of appointing receivers should be prudently and cautiously exercised, and except in clear and urgent cases should not be resorted to." Code of 1933, § 55-303. "Creditors without lien may not, as a general rule, enjoin their debtors from disposing of property, nor obtain injunction or other extraordinary relief in equity." § 55-106. If the plaintiff ever had an equitable lien on this property, such lien was released by the foreclosure sale to which the plaintiff wholly assented. The evidence that Mrs. Clark "concealed from the sheriff," who conducted the foreclosure sale, "the fact that she was only a nominal plaintiff, and concealed from the representative of the National Casket Company of Georgia that she did not intend to pay for the said property which she pretended to purchase," was so assumptive and indirect as to be insufficient, without more, to show the existence of fraud on the part of Mrs. Clark in receiving the property for the purpose of foreclosing the mortgage in her name. The evidence may show a breach of this contract by Mrs. Clark, but it does not show fraud in the inception of such agreement. Cf. *Brooks* v. *Pitts,* 24 *Ga. App.* 386 (100 S. E. 776). In the circumstances, the foreclosure sale was not void or voidable, but the unincumbered title passed. Accordingly, even if Mrs. Clark be liable as claimed, the liability is personal, and does not stand as a lien upon the property. Such personal liability plus her "admitted" insolvency would not afford ground for the appointment of a receiver, but additional facts would be necessary. *Jordan* v. *Beal,* 51 *Ga.* 602; *Johnson* v. *Farnum,* 56 *Ga.* 144; *Spence* v. *Solomons Co.,* 129 *Ga.* 31 (58 S. E. 463); *Atlanta & Carolina Ry. Co.* v. *Carolina Portland Cement Co.,* 140 *Ga.* 650 (79 S. E. 555); *Virginia-Carolina Chemical Co.* v. *Everett,* 149 *Ga.* 681 (101 S. E. 805); *Hermann* v. *Mobley,* 172 *Ga.* 380 (158 S. E. 38); 53 C. J. 45, § 32. While there were additional facts in the present case, they involved the rights of at least one innocent purchaser, and thus could not help the plaintiff.

The foreclosure proceedings having been taken at the instance of the plaintiff and being regular upon their face, Mrs. Clark obtained, with the plaintiff's consent, such "external indicia" of title that a subsequent sale or disposition, by or under her, to an innocent purchaser operated to divest the lien of the plaintiff as to such purchaser, if in fact it had a lien as claimed. Code of 1933, § 96-207; *Ross* v. *Cooley,* 113 *Ga.* 1047 (2) (39 S. E. 471); *Patterson* v. *Peoples Loan & Savings Co.,* 158 *Ga.* 503 (123 S. E. 704); *Pilcher* v. *Enterprise Manufacturing Co.,* 36 *Ga. App.* 760 (138 S. E. 272). Mrs. Clark after purchasing the property delivered it to her son, who with her consent proceeded to use it in the formation of a partnership with J. W. Park, the latter acquiring innocently and for value one half undivided interest in the property as partnership assets. Under the facts stated, the plaintiff could not disturb the right of such innocent purchaser to enjoy the joint possession of the property and to have it applied to the purposes of the partnership. It would seem to be unnecessary to go further and to consider the rights of Swift as holder of the bill of sale executed by the partnership to secure a present loan of money, made in good faith and without notice, or to dwell upon the fact that neither Park nor Swift was made a party to the present suit. See *Shepard* v. *Veal,* 178 *Ga.* 535 (3) (173 S. E. 644), and cit. Under the facts appearing, the judge in the exercise of a discretion could not properly have appointed a receiver, and his order refusing the appointment, as a matter of law, was not erroneous.

*Judgment affirmed. All the Justices concur.*