32387. BLOUNT *et al. v.* BAINBRIDGE.

Decided April 13, 1949.

*Ernest J. Haar,* for plaintiffs in error.

*Brannen, Clark & Hester, Arthur L. Purvis,* contra.

Parker, J. E. M. Bainbridge had an attachment against Richard Minich and J. A. Taylor issued and levied on a Buick automobile, to which Joseph A. Blount and others trading as United Motor Company filed a claim. The plaintiff filed his declaration in attachment, alleging substantially: that on March 28, 1947, at an auction sale held in Valdosta, Georgia, the plaintiff offered for sale the particular Buick automobile levied on, which was purchased by Taylor for the account of Minich and Taylor, trading as Southeastern Motors of Georgia, at and for $2550; that the plaintiff received in payment of the purchase-price of said automobile a check drawn on the Savannah Bank and Trust Company of Savannah, Georgia, signed Southeastern Motors of Georgia, by Richard Minich and J. A. Taylor; and that the check was deposited the following day in a bank in Palatka, Florida, and was returned four or five days later marked

"insufficient funds." On April 15, 1947, the check was presented by the plaintiff in person to the bank in Savannah, and he was advised that the account had been closed, and said check has not been paid. On April 22, 1947, the automobile was located on the streets of Savannah, and the plaintiff, being informed that said automobile would in all probability be sent to Statesboro, Georgia, to an auction sale to be held that day, and in order to enforce the collection of the purchase-price of said automobile, sued out the attachment, returnable to the City Court of Savannah, which was levied on the automobile.

The defendant Taylor filed an answer denying that he was a copartner of Richard Minich, and denying that he had any interest in Southeastern Motors of Georgia, and alleging that he was merely an employee acting under the direction of Minich and at his special instance, but admitting that on March 28, 1947, as such employee, he purchased the automobile for Minich individually and trading as Southeastern Motors of Georgia. He alleged further that the automobile was delivered into the possession of Minich immediately after said purchase, and that, if it was disposed of, he (Taylor) received none of the benefits or proceeds of sale. Minich filed no answer.

The plaintiff testified substantially to the allegations set out in his declaration in attachment, and offered additional testimony tending to show that, at the time the automobile was purchased from him, Minich was in financial difficulties and had about $60,000 worth of his checks returned. The evidence also tended to show several transactions between Minich and Blount or United Motor Company before and about the time of the transaction with the plaintiff. The claimants offered evidence tending to show that they bought the automobile in question through Taylor from Southeastern Motors on April 1, 1947, without any notice or knowledge on their part that there was anything wrong between the plaintiff and Minich and Taylor, and received a bill of sale for the automobile signed by Minich and witnessed by a notary public. Taylor testified that he didn't tell the claimants there was anything wrong with the transaction, and gave them no evidence of any kind that they would have any difficulty about the purchase of the car, and that he did not know when he sold the automobile to the claimants that the check given to the plain-

tiff would not be cashed. Joe A. Blount, who bought the automobile for the claimants, testified that he had no knowledge whatever that there was anything wrong with reference to the automobile prior to the closing of the transaction on April 1. The evidence showed further that the car was sold to the claimants for $2150, and after deducting $325 that Minich owed Blount, the balance on the purchase-price was paid by the check of the claimants dated April 1, 1947. The plaintiff testified as to a conversation that he had with Blount on April 15, in which Blount disclaimed any knowledge as to the whereabouts of the automobile. Blount admitted a conversation with the plaintiff, and testified that he told the plaintiff that he did not know whether he had bought the automobile, but would check up and see when the plaintiff gave him the motor number, and that he did not try to withhold anything from the plaintiff.

Upon the conclusion of the evidence the court directed a verdict in favor of the plaintiff on the theory, as expressed by the court, "that one cannot be a bona fide purchaser for value without notice of a defect in the title where he takes the property without any indicia of ownership."

The plaintiff relies on those cases holding that a sale of stolen property by one bona fide purchaser to another bona fide purchaser does not divest the true owner's title, as held in *Barrett* v. *Miller*, 36 *Ga. App.* 48 (135 S. E. 111), and upon those cases holding that, where an article is sold for cash and a check which proves to be worthless is given for the purchase-price, no contract of sale arises and no title to the property passes, as held in *Chafin* v. *Cox*, 39 *Ga. App.* 301 (147 S. E. 154), and citations. An examination of the original record in that case shows that the property there involved, a diamond ring, was obtained from the owner by a person who gave the owner a forged check on a non-existing bank under circumstances that amounted to a felony, for which transaction such person was indicted and entered a plea of guilty. In that case it appeared also that the defendant was told by the plaintiff of the circumstances under which the ring had been gotten from her, and was advised not to buy it. The plaintiff also relies on the general principle that "A seller can convey no greater title than he has himself," as stated in the Code, § 96-111. Of course, cases relating to the sale of stolen property are clearly

different from this case. The rule that, where a bad check is given in a cash sale, the vendor may recover possession of the property from the vendee is not applicable where the rights of innocent purchasers have intervened. This was the holding in *Capital Automobile Co.* v. *Ward*, 54 *Ga. App.* 873, 874 (189 S. E. 713), and seems to us to be a sound conclusion. The rule that a person can convey no greater title than he has himself must be considered and construed in connection with Code §§ 96-207 and 37-113, which recognize the principle that the intervention of the element of estoppel may prevent the true owner from setting up his title as against the bona fide purchaser. The plaintiff relies particularly on the case of *Darby* v. *Parrish*, 42 *Ga. App.* 492 (156 S. E. 462). In that case there was no sale of the property to Babson, who in turn sold it to Darby. The property was merely left by Parrish, the true owner, in the possession of Babson, who undertook to sell it to Darby without any authority or right to do so, and this court held that such sale did not divest the true owner's title. In the instant case, the plaintiff sold the automobile to the purchaser at the auction sale in Valdosta, and delivered it to him then and there, and the purchaser then sold it to the claimants within two or three days thereafter, both the original purchaser and his vendee being used-car dealers. The *Darby* case is not contrary to the ruling herein made.

We recognize the principle that, where an agreement is made to sell personal property for cash, and on delivery of the property a check is given for the purchase-price, *as between vendor and vendee*, the title to the property does not pass unless it be expressly agreed between the parties that the check is taken as payment; and where the check is returned by the bank as worthless, the vendor may recover possession of the property from the vendee. *Winton* v. *Butler*, 53 *Ga. App.* 696 (186 S. E. 773). "This principle is by its express terms applicable only as between vendor and vendee," as was held in *Capital Automobile Co.* v. *Ward*, supra, a case which seems to control the instant case. "Where an owner has given to another such evidence of the right of selling his goods as, according to the custom of trade or the common understanding of the world, usually accompanies the authority of disposal, or he has given the external indicia of the right of disposing of his property, a sale to an innocent pur-

chaser divests the true owner's title." Code § 96-207. This section is a codification of the ruling in *Rosser, Armistead & Co.* v. *Darden,* 82 *Ga.* 219 (7 S. E. 919, 14 Am. St. R. 152), which dealt with a principal and his agent. But the ruling is not restricted to cases involving principal and agent. "The estoppel is based on the justice of protecting an innocent purchaser against damage that would otherwise come to him through the original act of the owner in making it possible for one, . . to appear as rightfully entitled to sell that for which the innocent party parts with his money or property." *Morris* v. *Courts,* 59 *Ga. App.* 666, 672 (1 S. E. 2d, 687). We do not find any concrete definition of the term "external indicia" of the right of disposing of property, as used in the Code section, in the Georgia decisions, but "indicia of ownership" has been held to be "synonymous with circumstantial evidence." Graham Ice Cream Co. v. Petros, 127 Neb. 172 (254 N. W. 869). In *National Casket Company* v. *Clark,* 181 *Ga.* 6, 10 (181 S. E. 146), it was held that, where one of the defendants purchased property under foreclosure proceedings taken at the instance of the plaintiff, which were regular on their face, she obtained, with the plaintiff's consent, such "external indicia" of title that a subsequent sale by or under her to an innocent purchaser operated to divest the lien of the plaintiff as to such purchaser. While the facts in that case are not like those in the instant case, the principal applied there seems applicable here. "A title obtained by fraud, though voidable in the vendee, will be protected in a bona fide purchaser without notice." Code, § 96-208.

"It has been many times stated, and from practical necessity in the transaction of business should be adhered to, that possession of personal chattels, by virtue of which such person has been given dominion and control over the property *as if it were his own,* carries with it the presumption of ownership and consequent right of disposition of such chattel. Thus it would seem that, where under a contract of sale an owner gives to another person unrestricted and unqualified possession of personal property, to deal with and use as his own, a purchaser bona fide, for a valuable consideration, from such person in possession divests such owner of his title; although it may be said

that the rights of such bona fide purchaser do not depend upon the title or actual authority of the person with whom he deals directly, but are derived from the acts of the real owner, which preclude him from disputing, as against such bona fide purchaser, the existence of the title or power which, through negligence or mistaken confidence, he caused or allowed to appear to be vested in the person making the transfer. 24 R. C. L. 379, § 688. This is merely a special application of the statute or rule embodied in our Code, § 37-113 that, 'When one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury shall bear the loss.' " *Capital Automobile Co.* v. *Ward*, supra, on page 875. It appears here that the plaintiff made an unconditional sale of the automobile, his testimony being as follows: "At the auction sale, I sold one Buick, 4-door sedan to Mr. Taylor of Southeastern Motors of Georgia. In payment for this automobile, I received this check." It appears also that the automobile was delivered at the time of the sale in Valdosta to Taylor, who was given unqualified possession and complete dominion and control over it as if it were his own, and was permitted to take the automobile from Valdosta to Savannah where it was sold to the claimants.

Our conclusion is that the court erred in directing the verdict for the plaintiff. We think that the sale and delivery of the automobile to Taylor, under the circumstances shown in the record, and the unconditional delivery of the automobile under the sale to him as shown, were sufficient external indicia of the right of Taylor to sell the property to an innocent purchaser, such as would either divest the plaintiff's title under the Code, § 96-207, or estop the plaintiff from asserting his title as against the innocent purchaser under the Code, § 37-113.

The court erred in refusing to grant the motion for new trial. *Judgment reversed. Sutton, C. J., and Felton, J., concur.*