**Humphrey Cadillac and Oldsmobile Co., Inc., Plaintiff-Appellee, v. Dr. Charles A. Sinard, Defendant-Appellant.**
**Humphrey Cadillac and Oldsmobile Co., Inc., Plaintiff-Appellee, v. Edward L. S. Arkema, Defendant-Appellant.**

Gen. Nos. 51,176 and 51,177.

First District, Second Division.

June 27, 1967.

Rehearing denied July 31, 1967.

Olson and Hanelin, of Chicago (J. W. Olson, of counsel), for appellants.

Ahern and Gillogly, of Chicago (Kevin J. Gillogly, of counsel), for appellee.

MR. JUSTICE BRYANT delivered the opinion of the court.

This is an appeal from judgments of the Circuit Court of Cook County awarding possession of two Cadillac automobiles to the plaintiff, Humphrey Cadillac and Oldsmobile Co., Inc., hereinafter referred to as Humphrey. Defendants' theory on this appeal is: (1) That the plaintiff, by its agent and employee, William Warhurst, placed the Cadillac automobiles in the hands of a dealer in automobiles, and, by doing so, gave that dealer power to transfer all rights of the plaintiff in the automobiles; (2) that plaintiff Humphrey is bound by the acts of its agent and employee even though such acts may have been contrary to its instructions; and (3) that defendants were buyers in the ordinary course of business and were good faith purchasers for value as defined in the Uniform Commercial Code, chapter 26, § 1–201(9).

The facts of this case are as follows: Plaintiff Humphrey Cadillac and Oldsmobile Co., Inc., is a very large

automobile dealer with its main place of business in Rockford, Illinois. At the time of the transactions in question, William Warhurst was employed by plaintiff as the wholesale and fleet manager. Warhurst also had the authority to make sales at retail. Out of a work force of 96 or 97 employees Warhurst was the number four or five man. On wholesale, fleet and retail sales of Cadillacs Warhurst reported to John G. Jason, Vice President and General Manager of plaintiff.

Plaintiff, through William Warhurst, had on occasion sold automobiles to Raymond Johnson, who was known to plaintiff as an automobile dealer. Johnson had a sales lot at 103rd Street and Normal Avenue and also operated a restaurant and lounge known as Royal Coachman, located at 119th Street and Southwest Highway, Palos, Illinois. Following some difficulty in obtaining payment from Johnson, John Jason, Vice President of plaintiff, instructed William Warhurst that no further cars were to be sold to Johnson. Nevertheless, it is apparent that Warhurst continued to sell automobiles to Johnson, including the two involved in the transaction which is the subject of this appeal.

Defendant Dr. Charles A. Sinard, is a dentist with offices at 11106 South Michigan Avenue, Chicago, and defendant Edward L. S. Arkema is an attorney. Dr. Sinard had known Raymond Johnson for at least fifteen years. Since 1950 or 1951 Sinard purchased about ten new Cadillacs from Johnson. In 1958, 1961 and 1962 he purchased Cadillacs from Johnson and obtained certificates of title to those automobiles. The certified records of title to those three cars showed that the 1958 Cadillac originated with Metropolitan Cadillac in Milwaukee, and the 1962 Cadillac with the plaintiff. Metropolitan Cadillac in Milwaukee was part of plaintiff's organization of dealers.

The purchase by Sinard of the car replevined from him in the proceedings below was started by a telephone call from Johnson on or about December 3, 1963, when Johnson told Sinard that he had a 1964 Eldorado, Biarritz, convertible, gold colored Cadillac, at a total cost to Sinard of $5,760.70 (cash plus a trade-in). The manufacturer's suggested retail price on this model was $7,497.15. Sinard went to Johnson's car lot located at 103rd and Normal and completed the transaction, paying Johnson $3,328 in cash and trading in his 1962 Cadillac. Sinard did not receive a certificate of title. He made numerous telephone calls to Johnson and met with no success. Sinard also made several telephone calls to the plaintiff in Rockford to try and obtain title for his car. He was advised by William Warhurst that the car was paid for but the title certificate had been misplaced and was in the possession of Hertz Company and that he (Sinard) would receive it in a short time. All that the defendant ever received was a set of Cadillac owner's books from Johnson, which showed Hertz Corporation as the owner.

Defendant Arkema had not dealt with Johnson before buying the Cadillac which was the subject of the replevin proceedings. On March 14, 1964 he purchased the automobile replevined from him from Johnson. This transaction took place at Johnson's restaurant, the Royal Coachman, where Arkema was introduced to Johnson by Clifford J. Dreyer, a lecturer for the Cook County Traffic Safety Commission. Arkema paid $2,392 by check plus the trade-in of his 1964 Oldsmobile. In response to two telephone calls made to Warhurst at plaintiff's place of business, Arkema received a set of Cadillac owner's books, which showed the owner to be Arkema but gave his address as P. O. Box 1526, Rockford, Illinois, the P. O. Box address of plaintiff.

The basic issue we are confronted with on this appeal is whether the defendants acquired good title to

the Cadillacs which they purchased. It is our view that they did and that the decision of the trial court must be reversed.

The Uniform Commercial Code, Ill Rev Stats, chapter 26, § 2–403, provides as follows:

"(1) . . . . When goods have been delivered under a transaction of purchase the purchaser has such power (to transfer a good title to a good faith purchaser for value) even though

"(a) . . .

"(b) the delivery was in exchange for a check which is later dishonored, or

"(c) it was agreed that the transaction was to be a 'cash sale,' or

"(d) the delivery was procured by fraud punishable as larcenous under the criminal law.

"(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business."

There can be no question that William Warhurst was acting within the scope or apparent scope of his authority when he sold the automobiles in question to Raymond Johnson. We have already seen that Warhurst was fleet and wholesale manager for plaintiff and that he was responsible only to the Vice President and General Manager of Humphrey. There can also be no question that Raymond Johnson was known to plaintiff as an automobile dealer. Nor can there be any question that the defendants dealt with Johnson on the basis that he was an automobile dealer. Dr. Charles Sinard had been buying Cadillacs from Johnson since 1950 or 1951.

The intent and purpose of chapter 26, § 2–403, supra as stated in the comment to the section is as follows: "This section advances the law of Illinois by extending further protection to bona fide purchasers of goods."

William D. Warren, in his article "Cutting off Claims of Ownership Under the Uniform Commercial Code," 30 U of Chicago Law Review 469 (1962) states, at page 472:

> "In section 2-403 of the Code the bold decision is made to apply, in a limited form at least, the commercial or mercantile theory to goods. Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him the power to transfer all rights of the entruster to a buyer in ordinary course of business. The buyer in ordinary course of business is one who in good faith buys goods from a person in the business of selling goods of that kind, . . .
> "The effect of these provisions is that when goods are sold in an unquestionably commercial setting, they are to be given a high degree of negotiability."

We have here a situation where the plaintiff through its agent and employee William Warhurst allowed Cadillacs to be sold to Raymond Johnson, who was in the business of selling automobiles and to whom automobiles had been sold in the past. Raymond Johnson in turn sold such automobiles to the defendants and to other parties.

■ A buyer in the ordinary course of business is defined in chapter 26, § 1-201(9) supra, as meaning:

> "a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker."

As we have pointed out before, Dr. Sinard had had a long course of dealing with Raymond Johnson, and had bought cars from Johnson, which Johnson had obtained

from the plaintiff. Neither defendant Sinard nor defendant Arkema had knowledge nor should they have been put on notice that something was unusual about the sales involved in this case. Moreover, both defendants made attempts to obtain their titles from plaintiff and were assured that titles would be forthcoming.

In view of the facts in this case, for us to hold that the plaintiff had a right to replevy and to retain the automobiles purchased by the defendants would be neither in the spirit nor the letter of chapter 26, § 2–403, supra. For the above reasons the judgments are reversed and the causes remanded with directions to enter judgments in replevin for the defendants and against the plaintiffs and for hearing on the amounts of the judgments on the counterclaims for damages in favor of the defendants and against the plaintiffs.

The motion filed May 10, 1967 by the plaintiffs that the judgments be affirmed is denied.

Judgments reversed and causes remanded with directions.

LYONS, P. J and BURKE, J., concur.