61036. UNITED CAROLINA BANK v. SISTRUNK et al.

SOGNIER, Judge.

In October, 1978 James Brill, doing business as Automotive Clinic in Charlotte, North Carolina, bought a 1978 Arntz Reproduction Cobra automobile. Brill borrowed the money for this purchase from American Bank & Trust Company, now United Carolina Bank (UCB), and executed a chattel mortgage pledging the Cobra as collateral for the loan. UCB perfected its security interest in the Cobra pursuant to North Carolina law. Title to the car was applied for and obtained by Brill, listing Automotive Clinic as the registered owner and showing American Bank & Trust Co. as the first lienholder.

In July, 1979 Automotive Clinic's loan became delinquent, and the bank started making collection attempts. The bank was informed by Mr. Brill in the summer of 1979 (sometime between May and July) that the car was no longer in Charlotte, but that Automotive Clinic was trying to sell the car, which was in Georgia; a Mr. Southard was trying to sell it for Automotive Clinic. UCB had earlier agreed that Brill could sell the car and use the proceeds to pay off his loan.

On October 20, 1979 Lewis Sistrunk and his wife, Sara Smith, attended a car auction in Atlanta. They were the successful bidders on the Arntz Cobra and paid Auction America $17,784 for the car; they received a bill of sale for the car and were told they would receive title to the car in approximately 10 days. Sistrunk and his wife made no inquiry as to the status of the title. No title was received and on inquiry, Sistrunk learned for the first time that UCB was holding the title and had a lien on the car. UCB sent a sight draft to Auction America's bank in Sandy Springs, Georgia but the draft was dishonored due to insufficient funds in Auction Atlanta's account. After several unsuccessful attempts to obtain its money from Auction America, UCB asked Sistrunk to return the car to the bank; Sistrunk

refused, and UCB filed an affidavit for foreclosure on personal property and to obtain a writ of possession for the car.

Subsequently, UCB filed a motion for writ of possession or in the alternative summary judgment; Sistrunk and his wife also filed a motion for summary judgment. After a hearing on the motions the trial court denied UCB's motion and granted Sistrunk and Smith's motion for summary judgment.

The trial court found that pursuant to a request by Automotive Clinic, UCB gave its express consent for Automotive Clinic to sell the Cobra and pay its loan obligation to UCB. The trial court then concluded, as a matter of law, that UCB's authorization to Automotive Clinic to sell the car created an agency relationship between UCB, as principal, and Automotive Clinic, as agent; that under the general power to sell, Automotive Clinic had authority to designate Auction America its servant for the purpose of selling the automobile, thus making Auction America a sub-agent of UCB; that by its express authorization to sell UCB waived its security interest in the collateral sold, but retained a security interest in the proceeds of the sale; and that Code Ann. § 109A-9—306 (2) provides a defense for the purchasers, Sistrunk and Smith. The trial court then found that there is no genuine issue as to any material fact and that defendants (appellees) are entitled to judgment as a matter of law; therefore, the trial court granted appellees' motion for summary judgment, and denied appellant's motion for summary judgment. On appeal, UCB contends the trial court's ruling on both motions was error.

1. UCB contends that the transaction in this case is controlled by the Motor Vehicle Certificate of Title Act (Code Ann. Chap. 68-4A), while appellees contend that the Uniform Commercial Code, specifically Code Ann. § 109A-2—403 (2) and (3), is controlling.

Code Ann. § 68-421a (a) provides, in pertinent part: "Except as provided in Code section 109A-9—103, relating to . . . incoming goods already subject to a security interest . . . the security interest in a vehicle of the type for which a certificate of title is required shall be perfected and shall be valid against . . . subsequent transferees and the holders of security interests and liens on the vehicle by compliance with the provisions of this Chapter."

Code Ann. § 109A-9—103 provides, in pertinent part: ". . .

"(2) Certificate of title.

"(a) This subsection applies to goods covered by a certificate of title issued under a statute of . . . another jurisdiction under the law of which indication of a security interest on the certificate is required as a condition of perfection.

"(b) Except as otherwise provided in this subsection, perfection and the effect of perfection or nonperfection of the security interest

are governed by the law (including the conflict of laws rules) of the jurisdiction issuing the certificate until four months after the goods are removed from that jurisdiction and thereafter until the goods are registered in another jurisdiction . . ."

It is not disputed that UCB had a perfected security interest in the car, and the name of the bank as the holder of a security interest is shown on an existing certificate of title issued by the jurisdiction where the car was located when the security interest attached. Therefore, the bank's security interest perfected in North Carolina continued perfected in Georgia, and is valid against subsequent transferees. Code Ann. § 68-421a; *Kinder v. GMAC,* 117 Ga. App. 610, 611 (161 SE2d 372) (1968). However, appellees contend that because UCB authorized Automotive Clinic to sell the car, *UCB "entrusted"* the car to Auction Atlanta and thus, the transaction is governed by Code Ann. §§ 109A-2—403 (2) and (3).

Code Ann. §§ 109A-2—403 (2) and (3) provide:

"(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

"(3) 'Entrusting' includes any delivery or any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law." Our court has interpreted these provisions as applicable only to *owners* of goods. *McConnell v. Barrett,* 154 Ga. App. 767, 769 (2) (270 SE2d 13) (1980). See also Adams v. City National Bank & Trust Co., 565 P2d 26, 29 [1] (1977). Since UCB was not the owner of the car it could not be the entruster and hence, defendant's contention that the remedy provided by §§ 109A-2—403 (2) and (3) applies is without merit. Id. For this reason, any testimony relating to whether or not UCB authorized Automotive Clinic to sell the car is not relevant, and should not have been considered by the trial court or included in its findings and conclusions. *McConnell,* supra, at 769 (3).

2. There was no transfer of title to the car from Automotive Clinic to Auction Atlanta, and thence to Sistrunk and Smith in compliance with Code Ann. § 68-415a and Code Ann. § 68-416a. Although Sistrunk had bought and sold several cars between 1970 and 1979, and was aware that a certificate of title was necessary to effectuate a transfer of ownership, he made no inquiry at the time of purchase as to the status of the title, which would have revealed the security interest of UCB. Under these circumstances, we cannot say that Sistrunk and his wife were bona fide purchasers for value and

thus protected against the security interest of UCB. *McConnell, supra,* at 768-769 (1). Accordingly, it was error for the trial court to grant summary judgment to appellees and deny appellant's motion for summary judgment and issuance of a writ of possession.

*Judgment reversed. Deen, P. J., and Birdsong, J., concur.*

DECIDED MARCH 10, 1981 — REHEARING DENIED MARCH 23, 1981 —

*David E. Krischer,* for appellant.
*Laurie C. Davis,* for appellees.