A90A2192. LOCKE v. ARABI GRAIN & ELEVATOR COMPANY, INC.

(399 SE2d 705)

Deen, Presiding Judge.

Appellant Bobby Locke, CEO and principal stockholder of Leeco Farm Center, Inc., d/b/a Worthco Farm Center (Worthco), hired a Mr. Hobby as Worthco's manager. It was subsequently discovered that, during some 13 months of his tenure as manager (February 1986 through March 1987), Hobby had sold corn stored with Worthco to appellee Arabi Grain & Elevator Company (Arabi) and pocketed the proceeds. There was evidence that Hobby and members of his family had previously done business with Arabi, and that Arabi did not know that Hobby was employed by Worthco.

In January 1989 Locke, the Commodity Credit Corporation (CCC), and Leeco executed an agreement whereby the CCC and Leeco transferred to Locke all rights to the allegedly stolen corn and to all causes of action against any or all who might have acquired the corn. Locke then brought an action in trover and conversion against Arabi. Arabi answered, alleging inter alia that the purchases were made in the ordinary course of business and in good faith and without notice of any claim that plaintiff might have on the goods; and that, since the allegedly stolen goods had been entrusted to Hobby by plaintiff, Hobby had the power to transfer all rights of the entruster to the defendant. Locke moved for summary judgment in April 1990, as did Arabi in May. The trial court entered an order in July 1990 denying plaintiff's motion and granting that of defendant. Locke now appeals. *Held*:

The trial court's order fully and clearly states the ratio decidendi underlying his rulings. We therefore quote with approval relevant portions of the order.

> Plaintiff based his case on trover and conversion. Were this a simple trover case the outcome in favor of Plaintiff would have been abundantly clear; however, the "entrusting

statutes" of the Uniform Commercial Code (O.C.G.A. § 11-2-403(2) (3) call for a different result. . . .

59 ALR 4th, page 572, addresses "entrusting" as follows: "An entrusting of property, defined by §2-403(3) [of the Uniform Commercial Code] as any acquiescence by the owner of goods in the retention of those goods by another, may result in the owner's loss of title to the property if the entrustee is a merchant who deals in similar goods. Under § 2-403 (2), a merchant who deals in goods of the same kind as those entrusted is empowered to convey the same title as that held by the entrustor to a buyer in the ordinary course of business. While this provision protects buyers who may be unaware of the risk that the property is owned by another person, it limits the original owner's remedy to seeking recovery for the value of the goods from the merchant."

59 ALR 4th, pages 580, 581, brings the matter of "entrusting" close to the facts of the instant case: "The courts in the following cases held that the owners of food products entrusted them within the meaning of § 2-403 when they permitted other parties to take possession of those goods for the purpose of reselling them.

Although focusing on the issue of whether a person to whom possession of goods was given met the definition of 'merchant' under § 2-403, the court in *Simonds-Shields-Theis Grain Co. v. Far-Mar-Co., Inc.*, (1983, WD Mo) 575 F Supp 290, 37 UCCRS 1547 (applying Nebraska law), also determined that when a grain elevator owner supplied soybeans to the owner of a receiving elevator through the person whose status as a merchant was in dispute, an entrustment occurred within the meaning of § 2-403(2). The elevator owner shipped soybeans to the receiving elevator using the services of an independent trucker. At the receiving elevator, the trucker represented that the beans belonged to him; consequently he, rather than the grain elevator, received payment. The receiving elevator contended that the elevator owner should bear the loss because it entrusted the beans to the trucker as a merchant, who was empowered by § 2-403 to transfer ownership. Considering this claim, the court noted that the elevator owner was aware that the trucker occasionally bought and sold grain, and that personnel at the receiving elevator had prior dealings with the trucker acting as a seller of grain. The court stated that occasional merchandising, known to the entruster, satisfied the requirements of § 2-403(2), and therefore concluded that the trucker was empowered to transfer the elevator operator's rights to the re-

ceiving elevator in the ordinary course of business.

The court in *Robison v. Gerber Products Co.* (1985, CA4 SC) 765 F2d 431, 41 UCCRS 88 (applying South Carolina law), stated that the trial court correctly determined that by allowing another farmer to retain possession and control of her portion of a crop, the owner of a peach orchard entrusted the crop within the meaning of § 2-403. After the orchard owner allowed the other farmer possession and control over her peaches, she never received her share of the money from the crop's sale. The court determined that the other farmer was a merchant who dealt in goods of the kind entrusted, and concluded that since the orchard owner entrusted the peaches to a merchant, the merchant's resale to a buyer in the ordinary course of business passed title to the crop to the buyer.

. . .

Judge [former Chief Justice] Marshall wrote in *Simson v. Moon*, 137 Ga. App. 82, 83-84 (1975)[, aff'd. 236 Ga. 786 (1976)]:

"The issue is whether or not there was an 'entrusting' of the truck under UCC §2-403 (2) and (3) . . ., so as to allow Hollowell to pass good title to Simson.

The rule in Georgia under its former Sales Act (Code Ann. § 96-111) had been, 'The seller can convey no greater title than he has himself. There is no "market overt" in Georgia.' *Arnold v. Conner*, 100 Ga. App. 503 (1) (111 SE2d 638); 77 CJS 1099, Sales, § 291. While the spirit of this rule has been carried forward in Article 2 of the Uniform Commercial Code (UCC §2-403(1)), a prominent exception to it is found in the 'entrusting' provision of that Code section, UCC § 2-403 (2) and (3)."

. . .

Judge Marshall summarized in *Simson*, supra, at pages 85-86:

"The general thrust of the cases involving 'entrusting' of goods to a dealer is aimed at the protection of the purchaser, where the latter acts in 'good faith' and the owner takes the risk by placing or leaving his chattel with a merchant of his own choosing who could convert or otherwise misdeal it. See *Godfrey v. Gilsdorf*, 86 Nev. 714 (476 P2d 3); *Palmer v. Booth·& Cowley*, (N.Y.) 7 UCC Rptg. Serv. 182; *Linwood*

*Harvestore v. Cannon,* 427 Pa. 434 (235 A2d 377); *Couch v. Cockroft,* (Tenn.) 490 SW2d 713; *Humphrey Cadillac & Oldsmobile Co. v. Sinard,* 85 Ill. App. 2d 64 (229 NE2d 365); *Sherrock v. Commercial Credit Corp.,* (Del.) 290 A2d 648); *Apeco Co. v. Bishop Mobile Homes,* (Tex.) 506 SW2d 711, 3A Bender's UCC Service, Sales and Bulk Transfers § 10.06[2]. The Georgia courts have similarly protected the good faith purchaser in the 'entrusting' situations, both under the UCC . . . *Christopher v. McGehee,* 124 Ga. App. 310 (183 SE2d 624); *Charles S. Martin Dist. Co. v. Banks,* 111 Ga. App. 538 (142 SE2d 309)); and under the old sales law (see *Peoples Loan &c. Corp. v. McBurnette,* 100 Ga. App. 4 (2, 3) (110 SE2d 32), *Dealers Discount Corp. v. Trammell,* 98 Ga. App. 748 (106 SE2d 850); *Wolfe v. Smith,* 80 Ga. App. 136 (55 SE2d 675); *Capital Auto. Co. v. Ward,* 54 Ga. App. 873 (189 SE 713); *Pilcher v. Enterprise Mfg. Co.,* 36 Ga. App. 760 (138 SE 272)). These latter pre-UCC cases reach the same result based in varying degrees on 'estoppel' or 'apparent authority' or both. The protection afforded the purchaser 'is merely a special application of the broad equitable principle that where one of two innocent persons must suffer loss by reason of the fraud or deceit of another, the loss should rightly fall upon him by whose act or omission the wrongdoer has been enabled to commit the fraud.' *DePaulo v. Williams Chevrolet-Cadillac, Inc.,* supra, p. 603. See also, *Blount v. Bainbridge,* 79 Ga. App. 99, 103 (53 SE2d 122); *Morris v. Courts,* 59 Ga. App. 666, 672 (1 SE2d 687).' "

This court has continued to apply the statutory language in the same manner as in the cases cited in the trial court's order, above. "The language of [OCGA § 11-2-403 (2), (3)] is quite clear: actual entrustment to the merchant, or dealer, gives the power to transfer *'all rights of the entruster'* to a buyer in the ordinary course of business." *Commercial Credit Equip. Corp. v. Bates,* 154 Ga. App. 71, 73 (267 SE2d 469) (1980). We find no error below.

*Judgment affirmed. Pope, J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I concur but not with all that is said. The entruster in this case was the CCC, not plaintiff Locke. CCC was the owner of the corn. OCGA § 11-2-403 (2) and (3) apply only to *owners* of goods. *United Carolina Bank v. Sistrunk,* 158 Ga. App. 107, 109 (2) (279 SE2d 272) (1981), citing several earlier cases on this point. See also *Sunnyland*

*&c. Credit Union v. Ft. Wayne Mtg. Co.*, 182 Ga. App. 5, 6 (354 SE2d 645) (1987). It is the act or omission of the CCC in entrusting the corn to Leeco, the corporate merchant, which enabled the wrongdoing person, merchant Leeco's employee, to commit fraud. That is what allows this statutory departure from the common-law rule that a seller can convey no greater title than he has himself. *Commercial Credit Equip. Corp. v. Bates*, 159 Ga. App. 910 (285 SE2d 560) (1981).

Locke merely stepped into CCC's shoes when he obtained CCC's cause of action, if any, against purchaser Arabi, so that the defense that it had bought the corn from a merchant was available to Arabi. Leeco came within the statutory definition of merchant, OCGA § 11-2-403 (2), as a matter of law because it dealt in corn, an undisputed fact.

DECIDED OCTOBER 26, 1990 —
REHEARING DENIED DECEMBER 4, 1990 — 

*Kirbo & McCalley, William C. McCalley, John V. Forehand*, for appellant.
*Guy V. Roberts, Jr.*, for appellee.