**AGRICREDIT ACCEPTANCE, LLC, Plaintiff,**

v.

**Thomas Gary HENDRIX, Hohenberg Bros. Co., Loeb & Company, Inc., The Montgomery Company, Inc., Collins Bonded Warehouse, Inc., Candler Gin & Warehouse, Inc., Goldkist, Inc. d/b/a Goldkist Cotton Warehouse, Growers Gin and Warehouse, Inc., Savannah River Cotton Co., Inc., and Cottage Hill Trading Co., Inc., Defendants.**

**No. CV 698 073.**

United States District Court,
S.D. Georgia,
Statesboro Division.

Jan. 19, 2000.

Grant T. Stein, Alston & Bird, Atlanta, GA, for Agricredit Acceptance, LLC, plaintiff.

Patrick T. O'Connor, Oliver, Maner & Gray, Savannah, GA, for Thomas Gary Hendrix, defendant.

John M. Tatum, Hunter, Maclean, Exley & Dunn, Savannah, GA, for Hohenberg Bros. Co., Loeb & Co., Inc., Montgomery Co., Inc., defendants.

L. Dean Best, Fulcher, Hagler, Reed, Hanks & Harper, LLP, Augusta, GA, for Collins Bonded Warehouse, Inc., defendant.

Robert Simmons Lanier, Jr., Statesboro, GA, for Growers Gin and Warehouse, Inc., defendant.

### ORDER

NANGLE, District Judge.

Before the Court is defendant Hohenberg Bros. Co., Loeb & Company, Inc., Weil Brothers–Cotton, Inc., and the Montgomery Company, Inc.'s (the merchants') motion for summary judgment (Doc. 80). For the reasons that follow, defendants' motion is denied.

### I. BACKGROUND

Many of the facts of this case were thoroughly set forth in this Court's Order denying defendants' motion to dismiss dated December 21, 1998 (Doc. 70). Consequently, the background section of that Order; Order dated Dec. 21, 1998 at 1–4; is incorporated herein by reference. Facts specific to the determination of this motion are set forth below.

The defendant merchants buy cotton stored in warehouses and resell it to textile mills. Br.Supp.Defs.' Consolidated Mot. Summ.J. at 1 (Doc. 81). These transactions are generally electronic in nature, involving electronic warehouse receipts (EWRs) maintained in the central operating systems of various EWR providers. Id. at 1–2. The sale typically begins with the merchants' receipt of a recap sheet from a prospective seller, which describes a number of bales being offered for sale by grade, quantity and warehouse in which the bales are stored. Id. at 2. The merchant then telephones the seller and submits an offer involving either a fixed price or an "on call" price which is based on the price of cotton futures on the New York market. Id. Once an agreement is reached between the merchant and the seller, the seller transfers the EWRs for the bales sold into the name of the merchant, and the merchant receives a confirmation of this transaction from the EWR provider. Id. When the EWRs are in the name of the merchant, the merchant is able to obtain a list of the bales by receipt number from the central filing system by downloading the list into the merchant's computers. Id. The sale is completed when the merchant pays the seller for the cotton represented by the EWRs. Id.

These sales can also be accomplished via contract for future delivery. Id. at 5. These contracts involve the seller promising to provide some specific number of bales in the future at a provisional price. After the seller acquires the bales, it transfers the EWRs for the bales into the name of the merchant and the process proceeds as above. Id.

Thomas Hendrix's 1997 cotton crop was financed by a loan from plaintiff Agricredit Acceptance Corporation (AAC). Order dated Dec. 21, 1998, at 2. The loan was secured by the cotton crop. Id. AAC's security interest was properly perfected by filing the Security Agreement in the real estate records of the counties wherein the cotton was grown and with the County clerks' offices. Id. at 3. Sea Island Cotton Trading was designated as a selling agent through which Hendrix would sell the cotton crop, and AAC notified Sea Island of its security interest in accordance with the provisions of the Food Security Act (FSA), 7 U.S.C. § 1631. Id. Hendrix's cotton

crop was ginned, baled, and stored in various warehouses, including Collins Gin & Warehouse, Candler Gin & Warehouse, Goldkist, Inc., Growers Gin & Warehouse, Inc., and Bulloch Gin. *Id.;* Br.Supp.Defs.' Mot.Summ.J. at 3. The warehouses issued EWRs for the cotton in the central filing system of the EWR provider to which they were subscribed. Br.Supp.Defs.' Mot. Summ.J. at 3. These receipts were eventually placed in the name of Sea Island. *Id.* at 4; Order dated Dec. 21, 1998, at 3.

All of the defendant merchants purchased large quantities of cotton from Sea Island in 1997 and 1998, including many bales from Hendrix's 1997 crop. The merchants paid Sea Island for these bales, and the EWRs representing the bales were transferred by Sea Island into the names of the purchasing merchants. Br. Supp.Defs.' Mot.Summ.J. at 4–15. Sea Island never paid AAC or Hendrix for the cotton in violation of its obligations under the FSA notice. Order dated Dec. 21, 1998, at 4. Consequently, plaintiff AAC filed suit against the defendant merchants and others seeking foreclosure of its security interest in the Hendrix cotton, a writ of possession against anyone in possession of the cotton, and a finding of conversion and an award of damages against the cotton merchants, among other things. *Id.*

The defendant merchants assert that because the EWRs representing the Hendrix cotton were duly negotiated to them by Sea Island and because AAC entrusted the cotton to Hendrix with apparent authority to sell it, the cotton is no longer subject to AAC's security interest. That is, the merchants assert that duly negotiated EWRs have priority over a prior perfected security interest, especially when the secured party entrusts the collateral to the borrower. As this Court found in its Order dated December 21, 1998, the resolution of these issues depends on this Court's interpretation of the Georgia Uniform Commercial Code and its application to the facts of this case. *Id.* at 13–14.

## II. *ANALYSIS*

### A. *Summary Judgment Standard*

Summary judgment serves to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed.R.Civ.P. 56 advisory committee's note, *cited in Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). It is appropriate only when the pleadings, depositions and affidavits submitted by the parties indicate no genuine issue of material fact and show that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A court must view the evidence and any inferences that may be drawn from it in the light most favorable to the nonmovant. *Mercantile Bank & Trust Co., Ltd. v. Fidelity & Deposit Co.,* 750 F.2d 838, 841 (11th Cir.1985).

The party seeking summary judgment must first identify grounds demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Metropolitan Multi-List, Inc.,* 934 F.2d 1566, 1583 n. 16 (11th Cir.1991), *cert. denied,* 506 U.S. 903, 113 S.Ct. 295, 121 L.Ed.2d 219 (1992). Such a showing shifts to the nonmovant the burden to go beyond the pleadings and present affirmative evidence showing that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–57, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Thompson,* 934 F.2d at 1583 n. 16. "Factual disputes that are irrelevant or unnecessary will not be counted," *United States v. Gilbert,* 920 F.2d 878, 882–83 (11th Cir.1991) (citation omitted), and a mere scintilla of evidence supporting the nonmovant's position will not fulfill this burden. *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990).

### B. *Georgia's Uniform Commercial Code*

In Georgia, a security interest in crops can only be perfected by the filing of a

financing statement.[1] O.C.G.A. § 11–9–302(1)(h). Generally, a perfected security interest takes priority over other liens, claims or rights to property and to security interests perfected at a later date. O.C.G.A. §§ 11–9–310 and –312. This general rule is of course subject to exception. For example, a buyer in the ordinary course of business takes free of a security interest created by his seller, O.C.G.A. § 11–9–307(1). Furthermore, nothing in Article 9 of the UCC limits the rights of "a holder to whom a negotiable document of title has been duly negotiated ... and such holders ... take priority over an earlier security interest even though perfected," O.C.G.A. § 11–9–309.

A warehouse receipt is a negotiable document of title if it provides by its terms that the goods are to be delivered to bearer or to the order of a named person. O.C.G.A. § 11–7–104(1)(a). These receipts may be in an electronic format. O.C.G.A. § 10–4–19(e). A negotiable document running to order is negotiated by indorsement and delivery. O.C.G.A. § 11–7–501(1). A negotiable document running to bearer is negotiated by delivery alone. O.C.G.A. § 11–7–501(2).

To be duly negotiated, a document of title must be negotiated "to a holder who purchases it in good faith without any notice of any defense against it or claim to it on the part of any person and for value, unless it is established that the negotiation is not in the regular course of business." O.C.G.A. § 11–7–501(4). Good faith is de-fined by reference to O.C.G.A. § 11–1–201(19) as "honesty in fact in the conduct or transaction concerned."[2] "A person has 'notice' of a fact when: (a) He has actual knowledge of it; or (b) He has received a notice or notification of it; or (c) From all the facts and circumstances known to him at the time in question he has reason to know that it exists." O.C.G.A. § 11–1–201(25). Finally, in general, a person gives value for rights if he acquires them "in return for any consideration sufficient to support a simple contract." O.C.G.A. § 11–1–201(44). Section 11–7–502 provides that a holder to whom a negotiable warehouse receipt has been duly negotiated acquires title to the document, title to the goods, and the direct obligation of the warehouse to deliver the goods, except as provided in O.C.G.A. § 11–7–503.

Section 11–7–503 provides that:

(1) A document of title confers no right in goods against a person who before issuance of the document had a legal interest or a perfected security interest in [the goods] and who neither:

(a) Delivered or entrusted [the goods] ... to the bailor or his nominee with actual or apparent authority to ship, store, or sell ...; nor

(b) Acquiesced in the procurement by the bailor or his nominee of any document of title.

Neither Article 1 nor Article 7 defines the term "entrusted." This term is used else-

---

1. As defendants point out, O.C.G.A. § 11–9–305 provides that a security interest in goods may be perfected by the secured party's taking possession of the collateral. However, according to § 11–9–302(1)(h), this method would not be an effective method for perfection of a security interest in crops.

2. Plaintiff argues that good faith should be defined by reference to § 11–2–103 because defendants are merchants. This Section defines good faith in the case of a merchant as "honesty in fact and the observance of rea-sonable commercial standards of fair dealing in the trade." O.C.G.A. § 11–2–103(1)(b). However, the definitions Section of Article 7, § 11–7–102, does not permit reference to § 11–2–103 for the definition of "good faith." Rather, as a catch-all provision for terms not specifically defined in that Section, § 11–7–102 refers to the general definitions provision of Article 1, § 11–1–201. Consequently, the definition of good faith provided in Article 1 is the one which applies in Article 7.

where in the UCC, however. Section 11–2–403(3) defines it as "any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties." However, Georgia courts have found that this provision only applies to owners of goods, because one cannot entrust goods one does not own. *Sunnyland Employees' Fed. Credit Union v. Fort Wayne Mortgage Co.*, 182 Ga.App. 5, 354 S.E.2d 645, 647 (1987) (holding that party with security interest in mobile home could not be the entruster of it because party was not the owner of the home); *United Carolina Bank v. Sistrunk*, 158 Ga.App. 107, 279 S.E.2d 272, 274 (1981) (holding party with security interest in car could not be the entruster of it because party was not the owner of the car); *McConnell v. Barrett*, 154 Ga.App. 767, 270 S.E.2d 13, 15–16 (1980) (holding that non-owners cannot be entrusters and citing *Adams v. City Nat'l Bank & Trust Co.*, 565 P.2d 26, 29 (Okla.1977)). Acquiescence is not defined anywhere in the UCC.

### C. *Interpretation and Application of the UCC*

Defendants' motion for summary judgment is based on two theories: (1) that the EWRs were duly negotiated to the merchants and pursuant to O.C.G.A. § 11–9–309, the merchants' interest in the cotton has priority over AAC's interest, Br. Supp.Defs.' Mot.Summ.J. at 16–19; Defs.' Objections to Dep. Testimony Offered by Pl. at 2–4, 6, 7–8 (Doc. 123); and (2) that AAC waived the priority of its security interest by entrusting the cotton to Hendrix pursuant to O.C.G.A. § 11–7–503, Br. Supp.Defs.' Mot.Summ.J. at 20; Defs.' Objections to Dep. Testimony Offered by Pl. at 7–8; Defs.' Resp. Opp'n AAC's Objection to Affs. at 9–12 (Doc. 120).

### 1. Due Negotiation and § 11–9–309

■ For the EWRs to be duly negotiated to the merchants, the merchants must be purchasers in good faith without notice of claims or defenses to the receipts and for value. O.C.G.A. § 11–7–501(4). It is undisputed that the merchants purchased the EWRs for value. Consequently, the Court must determine whether the merchants also purchased the EWRs in good faith and without notice.

Good faith as defined in Article 1 means "honesty in fact." Plaintiff does not dispute that the merchants acted with honesty in fact in this transaction. Rather, relying on an improper definition of good faith, AAC asserts that good faith requires the merchants to perform a lien check on the cotton before purchase. The Court finds that the "honesty in fact" definition does not require the merchants to perform a lien check on the cotton prior to purchase. Consequently, the Court holds that the merchants are purchasers in good faith as a matter of law.

■ However, this finding does not end the inquiry. The merchants must also be purchasers without notice of any defenses or claims to the EWRs. Plaintiff relies on the third prong of Article 1's definition of notice in arguing that the merchants' experience with the cotton industry and its willful ignorance as to the existence of liens on the cotton constitute reason to know that plaintiff's defense to the EWRs existed. Pl.'s Resp. Opp'n Defs.' Mot. Summ.J. at 22–24 (Doc. 93). While some jurisdictions have required the existence of suspicious circumstances for a finding of "reason to know;" *Colin v. Central Penn Nat'l Bank*, 404 F.Supp. 638, 640–41 (E.D.Pa.1975); others hold that willful or deliberate indifference to or ignorance of information is a basis for a finding of "reason to know;" *Demoulas v. Demoulas*, 428 Mass. 555, 703 N.E.2d 1149, 1167 (1998) ("If a person confronted with a state of facts closes his eyes in order that he may not see that which would be visible and therefore known to him if he looked,

he is chargeable with 'knowledge' of what he would have seen had he looked.") (citations omitted); *New Bedford Inst. for Savings v. Gildroy,* 36 Mass.App.Ct. 647, 634 N.E.2d 920 (1994) ("Further, a holder has no duty to inquire unless 'the circumstances reveal a deliberate desire by the holder to evade knowledge of claims made by the maker.' ") (citations omitted).

The Court finds that the evidence in the record indicates that a genuine issue of fact exists concerning the merchants' notice of AAC's claims to the cotton. The merchants testified in deposition that they do not perform lien searches on cotton bought from merchants or gins. Dep. Hohenberg Bros. Co. through John D. Mitchell at 25–27 (Doc. 91); Dep. Weil Brothers–Cotton, Inc. through James A. Wade at 18–19 (Doc. 90); Dep. Loeb & Co., Inc. through James L. Loeb at 24 (Doc. 87); Dep. Montgomery Co. through Jack D. Atkins at 27–28, 42–43 (Doc. 89). However, when buying directly from the producer or when buying in a state with a central lien filing system, most of the merchants do perform lien searches. Dep. Mitchell at 25–26; Dep. Loeb at 24; Dep. Atkins at 28, 42–43. Further, when dealing with sales via contract for future delivery, the merchants include a clause in the contract requiring the seller to warrant that there are no liens on the cotton. Dep. Mitchell at 68–72. These facts imply that the merchants certainly knew of the possibility of the existence of liens. Whether their failure to search for liens amounts to deliberate indifference or ignorance to their existence, however, is less than clear from the facts presently in the record. The Court finds that this issue is one for a jury to decide.

■ Even if the Court finds that the merchants had no notice of AAC's claims to the cotton, this finding would not automatically provide superiority to the merchants' claims to the cotton. O.C.G.A.

§ 11–9–309 provides that "Nothing in this article limits the rights ... of a holder to whom a negotiable document of title has been duly negotiated ... and such holders take priority over an earlier security interest even though perfected." Defendants urge the Court to hold that this Section provides that any duly negotiated EWR automatically trumps a prior perfected security interest in the goods covered by that EWR. Defendants' interpretation of § 11–9–309 is in error. Such an interpretation would eviscerate the provisions of O.C.G.A. § 11–7–503, which expressly provide that EWRs confer no rights in the goods covered by the EWRs against security interests existing and perfected prior to the issuance of the EWR where there has been no entrustment or acquiescence on the part of the secured party. The proper interpretation of § 11–9–309 is that the Section only applies when the negotiable document holder and the secured party are both claiming an interest in the document. *Farmers State Bank of Somonauk v. National Bank of Earlville,* 230 Ill. App.3d 881, 172 Ill.Dec. 894, 596 N.E.2d 173, 174–76 (1992). That is, § 11–9–309 addresses disputes between competing interests in a negotiable document whereas § 11–7–503 covers disputes between competing interests in the underlying goods. Accordingly, even if the EWRs were duly negotiated to the merchants, disposition of the cotton covered by those EWRs depends upon the application of O.C.G.A. § 11–7–503.

### 2. Entrustment

■ Defendants argue that despite the Georgia courts' interpretation of § 11–2–403, this Court is free to find that AAC entrusted the cotton to Hendrix by leaving it in his possession and allowing him to sell it through Sea Island. However, because Article 1 and Article 7 provide no definition for the term "entrusted," this Court must look to the Georgia courts' interpre-

tation of that term as it is used in other sections of the UCC. *Banks v. Georgia Power Co.*, 267 Ga. 602, 481 S.E.2d 200, 202 (1997) (stating that court is required to construe statute with reference to other statutes and decisions of the courts); *Poteat v. Butler*, 231 Ga. 187, 200 S.E.2d 741, 742 (1973) ("All statutes are presumed to be enacted by the General Assembly with full knowledge of the existing condition of the law ... and their meaning and effect is to be determined in connection ... with reference to other statutes and decisions of the courts."). Because the Georgia courts have held in the context of § 11–2–403 that a secured party who does not own the goods cannot entrust them; *Sunnyland*, 354 S.E.2d at 647; *United Carolina Bank*, 279 S.E.2d at 274; *McConnell*, 270 S.E.2d at 15–16; this Court must hold similarly in the context of § 11–7–503.[3] Consequently, the Court finds that plaintiff did not entrust the cotton to Hendrix as a matter of law.

██ Plaintiff may, however, have acquiesced in the procurement of a document of title in the cotton (namely the EWRs) pursuant to § 11–7–503(1)(b). When a bank knows that a farmer is attempting to sell his collateral and it acquiesces in his procurement of documents of title to that collateral, the bank has waived its right to assert its security interest in the collateral. *Mercantile Bank of Springfield v. Joplin Regional Stockyards, Inc.*, 870 F.Supp. 278, 283 (W.D.Mo.1994). The evidence presently before the Court is not sufficient to support a ruling on this issue as a matter of law. Consequently, the question of plaintiff's acquiescence is better left to a jury.

### III. *CONCLUSION*

Because genuine issues of material fact exist,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment is denied.

---

**3.** This interpretation does not make the use of the term "entrusted" superfluous in the context of § 11–7–503. Rather, that Section also applies to any persons with any legal interest in the goods which was created prior to the issuance of the document of title. When such persons are the owners of the goods, the entrustment provision would apply.