A00A1528, A00A1529. THOMAS MOTE TRUCKING, INC. v. PCL CIVIL CONSTRUCTORS, INC.; and vice versa.

(540 SE2d 261)

RUFFIN, Judge.

Barkay Construction, Inc. sold PCL Civil Constructors, Inc. a slip form machine used to build curbs and gutters. Thomas Mote Trucking, Inc. later took the machine, claiming that Barkay had previously transferred the machine to it. PCL sued Thomas Mote Trucking for trover.[1] Following a bench trial, the trial court ruled that PCL had title to the machine and ordered Thomas Mote Trucking to return it, but awarded PCL no damages for hire for the period of wrongful detention. In Case No. A00A1528, Thomas Mote Trucking appeals, asserting that the trial court erred in determining that PCL owns the machine. In Case No. A00A1529, PCL appeals the court's failure to award damages. Because both cases involve the same operative facts, we have consolidated them. For reasons that follow, we affirm the trial court's ruling that PCL owns the machine, reverse the zero damages award, and remand for a redetermination of damages.

The record shows that Barbara Roberts formed Barkay Construction in 1993. In the fall of 1993, Thomas Mote, the president of Thomas Mote Trucking, offered to loan Barkay a sum of money. During 1993 and 1994, Mote loaned Barkay a total of $31,260. In exchange, Roberts executed two unsecured promissory notes in favor of Mote. One note was due in November 1994, and the other was due in March 1995. Roberts also issued Mote shares of stock in Barkay, making him a 49 percent owner of the company.

Barkay was unable to pay the promissory notes. According to Roberts, the company was nearly insolvent by the fall of 1995, and its only asset was a used slip form machine. At some point in 1995, Roberts and Mote met to discuss the business. During that meeting, Roberts prepared and signed a letter dated May 15, 1995, addressed to "Mr. Thomas Mote, Thomas Mote Trucking." The letter, which contained a reference line that stated "Re: Used Miller Formless Model M-1000 (Right Hand) S/N: 1010R," stated: "BarKay Construction Inc. transfers the above referenced slipform machine complete with trimmer, tools, and vibrators for the amount of $30,000 (Thirty thousand dollars)." The letter was signed by Roberts on behalf of Barkay.

Roberts testified that she executed the letter in an attempt to

---

[1] PCL also sued Barkay for breach of warranty of title, fraud in the inducement, and breach of contract, and it sued Barkay's founder, Barbara Roberts, for fraud. Because Barkay had filed for bankruptcy, however, the case proceeded to trial only against Thomas Mote Trucking. Thus, PCL's claims against Barkay and Roberts are not at issue in this appeal.

protect the slip form machine from creditors during bankruptcy, which she felt was imminent. Roberts said that she had just learned that Barkay could no longer purchase concrete, and "if we don't have concrete we can't work." Roberts testified that she prepared the letter in September 1995, but backdated it to May 1995 because Mote said that "under the bankruptcy laws the trustee can overturn any action that's taken or decisions made six months prior." Roberts denied that the letter transferred ownership of the machine, stating "[i]t was not a bill of sale. I didn't get any money for it. I didn't get anything for it. I was simply trying to protect the machine itself."

After Roberts prepared the May 15 letter, Barkay continued to use the slip form machine without paying rent to Mote. Roberts testified that Mote continued to demand payment on the outstanding promissory notes. She also stated that Mote offered to approach a bank with which he had a relationship to seek financing for Barkay, using the slip form machine as collateral. Roberts stated that, based on her discussions with Mote, she understood that either she or Mote would have been authorized to use the slip form machine — including possibly selling it — to procure financing for Barkay.

Mote testified to a very different understanding of the May 15 letter. According to Mote, Roberts drafted the letter and transferred the slip form machine to him because Barkay could not afford to pay the promissory notes. Mote said that he accepted the machine as full satisfaction for Barkay's debts. He admitted that he continued to ask Roberts for money, however, because he "still felt like she owed me some money besides the machine." Mote also testified that he allowed Barkay to continue using the machine rent-free after the transfer because he wanted Barkay (of which he owned 49 percent) to succeed.

Felmer Cummins, a certified financial planner who worked for Mote, testified that he was present when Roberts drafted the May 15 letter. Cummins said that he was concerned because Mote had no collateral for the promissory notes. Cummins testified that Roberts left the room, saying, "Well, I can sew this up. I'll give him the piece of equipment." Roberts returned with the letter, which — according to Cummins — was executed on May 15 and was not backdated.

In December 1995, Barkay was working on several projects, including a highway project under a subcontract with PCL. According to Roberts, however, the company was "still living hand to mouth." Roberts entered into an agreement to sell the slip form machine to PCL for $40,000, and she signed a "Bill of Sale" to that effect dated December 21, 1995. Under the Bill of Sale, Barkay warranted that it was conveying good title, free and clear of all encumbrances. In a separate document, PCL agreed to lease the machine to Barkay and to allow Barkay to repurchase it, applying the lease pay-

ments toward the purchase price.

Roberts testified that she called Mote and told him that she had sold the machine to PCL, but would be repurchasing it as Barkay performed the work under the subcontract. Roberts said that Mote wanted to know how much she could pay him, and she told him that she had used the proceeds of the sale to pay bills and had no money for Mote.

During the evening of January 25 or early morning of January 26, 1996, Mote removed the machine from the PCL job site. As of the date of trial, the machine remained in Mote's possession, and another business formed by him was using it to perform sidewalk and curb work. Mote testified that, although he heard rumors in January 1996, he did not know that PCL had bought the machine until after he picked it up. Mote stated, however, that he told Roberts he was going to get it in a couple of weeks before he did so.

Roberts testified that because most of Barkay's work required the slip form machine, the company ceased operations immediately after Mote took the machine. Barkay filed for bankruptcy in March 1996.

Following a bench trial, the trial court issued a judgment that (1) PCL has title to the slip form machine; (2) Thomas Mote Trucking is ordered to deliver the machine to PCL; and (3) PCL is not entitled to any damages from Thomas Mote Trucking for rental value of the property. The parties did not request, and the trial court did not issue, detailed findings of fact or conclusions of law.[2]

## Case No. A00A1528

1. In its first enumeration of error, Thomas Mote Trucking asserts that the trial court erred by denying its motion for summary judgment. As we have ruled, however, "[d]enial of a motion for summary judgment is rendered moot by the court's entry of judgment on the verdict. Thus, an appellate court will not review the denial of a motion for summary judgment following a trial on the merits."[3]

2. Thomas Mote Trucking also asserts that the trial court erred by allowing Roberts to testify to the meaning of her May 15 letter to Mote. According to Thomas Mote Trucking, such testimony was inadmissible parol evidence. PCL, on the other hand, argues that the evidence was admissible to prove that the purpose of the contract was to defraud creditors and to show that the contract lacked the

---

[2] See OCGA § 9-11-52.

[3] (Punctuation omitted.) *Owens v. McGee & Oxford*, 238 Ga. App. 497, 502 (5) (518 SE2d 699) (1999).

essential element of consideration.[4] We agree with PCL.

"Parol evidence is inadmissible to add to, take from, or vary a written contract."[5] Parol evidence may be introduced, however, to show that an agreement was void at the outset.[6] As PCL's principal argument at trial was that the purported transfer was void ab initio, Roberts' testimony was admissible on that point.

3. In three enumerations of error, Thomas Mote Trucking contends that the trial court erred in ruling that PCL owned the machine. We will affirm the trial court's ruling if there is any evidence to support it,[7] and we are "obliged to give due regard to the trial court's opportunity to judge the witnesses' credibility."[8] Applying this standard, we uphold the trial court's ruling, although not for the reasons urged by PCL.

"An action in trover will lie on the part of the true owner of personal property against one who has converted such property to his own use."[9] A plaintiff may prevail in an action for trover by showing that (1) it has title to the property or a right of possession;[10] and (2) the defendant was in possession of the property when the action was brought and, in its answer, denied that the plaintiff had title to, or the right to possess, the property.[11] Thomas Mote Trucking does not deny that PCL satisfied the second element, but argues that it, rather than PCL, owns the property by virtue of the May 15 letter. PCL argues that the May 15 letter was not a valid transfer for three reasons.

First, PCL contends that the letter was merely an attempt to defraud creditors. Roberts testified that "the sole purpose" of the letter was "an attempt to avoid any potential creditors' actions against Barkay Construction that might result in the loss of the [slip form] machine," and she later described the document as "fraudulently . . . made." She stated that Mote was aware of the fraudulent purpose of the transaction and even proposed backdating the letter to deceive the bankruptcy trustee. Under OCGA § 18-2-22 (2), a contract "made with intention to delay or defraud creditors, where such intention is known to the taking party" is null and void. The fact that a transfer is made with the intent to defraud creditors, however, does not make

---

[4] PCL also argues that the evidence was admissible to explain ambiguities in the letter. Although the letter does not appear to be ambiguous, we need not decide this question because the evidence was admissible for other reasons.

[5] OCGA § 13-2-2 (1); see also OCGA § 24-6-1.

[6] OCGA § 24-6-8; *del Mazo v. Sanchez*, 186 Ga. App. 120, 124 (366 SE2d 333) (1988).

[7] *Simmons v. McBride*, 228 Ga. App. 752, 753 (492 SE2d 738) (1997).

[8] *Nat. Chemco v. Union Camp Corp.*, 209 Ga. App. 317 (433 SE2d 691) (1993).

[9] *Fowler v. Kragel*, 93 Ga. App. 403 (1) (91 SE2d 794) (1956).

[10] See *Farkas v. Farkas*, 235 Ga. App. 491, 492 (510 SE2d 58) (1998).

[11] See *McDaniel v. White*, 140 Ga. App. 118, 119 (2) (230 SE2d 500) (1976).

it void for all purposes; it simply makes the transfer void as to the creditors and those with claims on the transferor. The transfer remains valid as between the transferor and transferee and their privies.[12]

Typically, a fraudulent transfer claim is made by a creditor who seeks to recover property that was wrongfully transferred by the debtor in an attempt to avoid paying the debt. In this case, however, a *subsequent transferee* of the debtor seeks to set aside the original transfer on the grounds of fraud. That is, PCL is attempting to show that, as between Barkay and Thomas Mote Trucking, Barkay retained title to the machine, allowing Barkay to sell it to PCL. Because PCL's claim to the machine is based on its purchase from Barkay, PCL is Barkay's privy and stands in Barkay's shoes in challenging the validity of Barkay's contract with Thomas Mote Trucking.[13] Thus, regardless of whether the conveyance was a fraud upon creditors, PCL has no argument that it was invalid as to Thomas Mote Trucking.

Second, PCL contends that the purported transfer lacked consideration. PCL points to Roberts' testimony that Barkay received nothing from Thomas Mote Trucking in exchange for the slip form machine and that Mote thereafter continued to demand payment of the promissory notes. It is axiomatic that a contract without consideration is invalid.[14] But the May 15 letter plainly states that the machine is being transferred "for the amount of $30,000." "[E]ven if it is shown that the recited consideration was not paid, it does not void the contract; the recital of the consideration merely gives rise to an implied promise to pay, which can be enforced by the other party."[15] Thus, the purported May 15 agreement does not fail for lack of consideration.

Third, PCL argues that the evidence demanded a finding that the May 15 letter was not a sales contract at all, but was intended to provide Thomas Mote Trucking with collateral against payment of the outstanding promissory notes. According to PCL, the letter was simply a security interest which Thomas Mote Trucking failed to perfect by either possessing the machine or following the requirements of OCGA § 11-9-301. Although Mote and Cummins both testified that they understood Roberts was giving Mote the machine as collateral, the unambiguous language of the May 15 letter says otherwise. The

---

[12] See *McCranie v. Cobb*, 174 Ga. 370, 379 (162 SE 692) (1932) (" ' "A fraudulent transfer is good as against the grantor . . . [and] parties claiming under him." ' ").

[13] See generally *Decatur North Assoc. v. Builders Glass*, 180 Ga. App. 862, 863 (1) (350 SE2d 795) (1986) (discussing meaning of "privity of contract").

[14] See OCGA § 13-3-40 (a).

[15] *Keheley v. Lawrence*, 172 Ga. App. 533, 534-535 (323 SE2d 717) (1984).

letter states that Barkay is transferring the machine for $30,000; it says nothing about creating a security interest.[16] Assuming the letter is an otherwise valid agreement, parol evidence cannot alter its plain terms.[17] Thus, we reject PCL's arguments for invalidating the May 15 letter.

There is, however, another basis on which the trial court could have decided that the letter was not a valid sale or transfer. The court could have concluded that the May 15 letter was not a sale or transfer at all because the parties never intended it to be so. As previously stated, parol evidence is admissible to show that a contract was void from the outset. Roberts testified that she was concerned that Barkay would lose the slip form machine if it filed for bankruptcy and that she therefore drafted a document purporting to sell the machine to Thomas Mote Trucking for $30,000 and backdated it several months. In the event Barkay did file for bankruptcy, Roberts would produce the letter and claim to have sold the machine outside the prohibited preference period; otherwise, she and Mote would simply act as if no sale had occurred.

Several additional facts support this interpretation. Thomas Mote Trucking did not take possession of the machine or exercise ownership of it following the May 15 letter, and Barkay continued using the machine as it always had, without paying any rent. Most importantly, Thomas Mote Trucking did not actually pay the $30,000 purchase price, and Mote continued to act as if payment on the promissory notes was due. Had the transaction truly been a sale, then Mote would have paid the purchase price or extinguished $30,000 of debt owed by Barkay. His failure to do either suggests that the entire transaction was a sham and was never intended to transfer title, even fraudulently. Thus, the court could have concluded that the transfer was phony and invalid and that Barkay still owned the machine when it was sold to PCL.[18]

Thomas Mote Trucking argues that PCL has waived any right to the slip form machine by failing to "perfect their claim" to the machine in Barkay's bankruptcy proceeding. The slip form machine was not listed in the bankruptcy petition as an asset of Barkay because, as Roberts testified, it no longer belonged to Barkay at that point.[19] Nevertheless, Thomas Mote Trucking argues that the

---

[16] Although the trial court found the letter to be ambiguous because it does not state to whom the machine is being transferred, we disagree. As the letter is addressed to Mote, it is obvious that Mote is the intended transferee.

[17] See OCGA § 24-6-1.

[18] See *Ga. Farm &c. Ins. Co. v. Brown*, 192 Ga. App. 504, 506 (385 SE2d 87) (1989) (where "neither party intended to enter into a contract for the sale and purchase of the . . . property," purported transfer was not a completed sale).

[19] Thomas Mote Trucking states that PCL "skirted closely to the prohibitive provisions"

machine was required to be brought into the bankruptcy proceeding and that its rightful ownership could only be adjudicated there. But Thomas Mote Trucking cites no authority for this proposition,[20] and we fail to see why PCL was required to intervene in a proceeding that ostensibly did not involve the property at issue.

### Case No. A00A1529

4. PCL contends that the trial court erred by awarding PCL zero damages. We agree.

In a trover action, the plaintiff may elect to demand a verdict for the return of the property "and its hire, if any."[21] The term "hire" means "reasonable rental value of the property."[22] The hire runs from the date the property was converted.[23]

Here, PCL elected to demand the return of the slip form machine and its hire.[24] PCL's construction manager, Patrick Malone, testified as to the rental value of the slip form machine. According to Malone, the "Blue Book" is an industry-accepted standard used to determine the fair rental value of equipment. Based on the Blue Book, Malone testified that the reasonable rental value of the slip form machine was $5,505.97 per month. Additionally, Malone testified that at the time Thomas Mote Trucking took the machine, PCL had leased it to Barkay for $100 per week for any period that the machine was not being used at the PCL project site. The rental rate for work performed at the PCL site was $6 per lineal foot of curb. Thomas Mote Trucking did not rebut Malone's testimony.

During closing argument, PCL's attorney asked that the trial court award hire based on either the Blue Book evidence or on the rental prices PCL was charging Barkay. The court agreed that PCL

---

of OCGA § 18-2-22 (1), which prohibits certain transfers by insolvent debtors. Roberts, however, testified that Barkay Construction was not insolvent when it executed the Bill of Sale to PCL, and there is no evidence suggesting that the Bill of Sale was otherwise fraudulent.

[20] Thomas Mote Trucking does cite authority for the proposition that Barkay should have included its lease of the machine in the bankruptcy estate. But it does not indicate how any failure of Barkay to include the lease resulted in PCL waiving its right of ownership of the machine.

[21] OCGA § 44-12-151 (3).

[22] *Adams Refrigerated Express v. Ingol*, 176 Ga. App. 457, 459 (1) (336 SE2d 286) (1985); see also *McLaurin v. Henry*, 90 Ga. App. 864, 867 (1) (84 SE2d 713) (1954).

[23] *Youngblood v. Ruis*, 96 Ga. App. 290, 294 (3) (99 SE2d 714) (1957).

[24] Thomas Mote Trucking contends that PCL waived its right to recover hire because the proposed verdict form in the consolidated pretrial order contained the term "damages" rather than "hire." We find no waiver, however, in view of PCL's clear statement at trial that it elected return of the property plus hire, and because it is plain from the trial court's oral findings that the court's judgment was based on such an election. See *Youngblood*, supra at 293 (2) (a) ("the fact that the jury returned a verdict for the property and hire, together with the entering of judgment thereon, is sufficient to show that such an election was made").

"would be entitled to some rent," but concluded that the Blue Book figures were "just out of reason" and that "any damages that I brought in would be pure speculation." Accordingly, the court awarded no hire.

Although, as the trier of fact, the court had discretion to determine the rental value of the machine,[25] the court did not have discretion to award *zero* damages for hire after it had determined that PCL owned the machine and that PCL was entitled to rent. The court was not required to accept the Blue Book figures quoted by Malone, but there was another measure of reasonable rental value — the rent that PCL charged Barkay for using the machine. As for the court's conclusion that any figure it arrived at would be speculative,

> (t)he rule against the recovery of vague, speculative, or uncertain damages relates more especially to the uncertainty as to cause, rather than uncertainty as to the measure or extent of the damages. Mere difficulty in fixing their exact amount, where proximately flowing from the alleged injury, does not constitute a legal obstacle in the way of their allowance, when the amount of the recovery comes within that authorized with reasonable certainty by the legal evidence submitted.[26]

There is no question that PCL was entitled to hire. The only question is the amount, and the trial court had ample evidence to assist in answering that question and no basis to conclude that zero dollars was a reasonable amount. We therefore remand for the trial court to determine the reasonable rental value of the slip form machine during the period it was wrongfully detained by Thomas Mote Trucking.

*Judgment affirmed in part, reversed in part, and remanded with instructions. Andrews, P. J., and Ellington, J., concur.*

DECIDED OCTOBER 6, 2000.

*Edward J. Magner, Jr.,* for appellant.
*Moye, O'Brien, O'Rourke, Hogan & Pickett, Nathan E. Minear,* for appellee.

---

[25] See *Cleaveland v. Alford,* 188 Ga. App. 690, 691 (2) (373 SE2d 853) (1988).
[26] *Al & Zack Brown, Inc. v. Bullock,* 238 Ga. App. 246, 251 (2) (518 SE2d 458) (1999).