## A06A1526. SMITH v. HARDEMAN.
(636 SE2d 106)

PHIPPS, Judge.

The dealer selling Francis and Marvin Smith's motor home on consignment took the purchaser's payment but never paid the Smiths. The Smiths then sued the dealer, its employees, and the purchaser, Garnett Hardeman. The trial court granted summary judgment to Hardeman and also awarded him $14,226 in damages for his attorney fees. Following her husband's death, Francis Smith appeals.[1] We find no error as to the grant of summary judgment, but vacate the award of fees because no showing or finding was made that the amount asked for was reasonable. We therefore affirm in part, vacate in part, and remand for a rehearing on the matter of fees.

The relevant facts are not in dispute. On July 12, 2003, the Smiths took their 1997 Pace Arrow motor home to the White County location of Preferred RV, a Florida-based dealer in the vehicles, and executed a written consignment agreement to sell the motor home for

---

[1] The trial court reserved ruling as to Marvin Smith pending the appointment of an executor or administrator over his estate. As Hardeman points out, this matter can be taken up on remand.

at least $25,000. Under the agreement, the Smiths had the right to "consider all offers" and to "make the final decision on any offer presented in writing or by phone," but agreed to accept $25,000 as "settlement in full," and acknowledged that Preferred was "not obligated to disclose [the] name of [the] purchaser or terms of the final retail sale." Later on the same day, Hardeman and his wife arrived at the dealership and agreed to purchase the motor home for consideration amounting to $47,793. They delivered a financed cash payment of $27,798 to Preferred at that time. Preferred prepared a title application, which the Hardemans executed. At the time of the agreement, the Hardemans did not know that the motor home was on consignment; instead, they assumed that it was owned by Preferred. Three months later, Hardeman released his trailer to Preferred and took delivery of the motor home. When Hardeman tried to obtain a tag soon afterward, however, the county tag office told him that the motor home was registered in the Smiths' name.

The Smiths did not learn that the motor home had been sold until a deputy at the dealership, which had by this time been locked down by White County authorities, told them that Hardeman was the purchaser. Having never been paid, the Smiths sued Hardeman for trover, and Preferred and others for conversion, fraud, and other wrongs. Hardeman answered and counterclaimed for specific performance of a promise to convey title as well as attorney fees. The Smiths and Hardeman both moved for summary judgment. The trial court granted summary judgment to Hardeman, ordered Francis Smith to transfer the title, and awarded Hardeman $14,226 in attorney fees.

1. Smith first argues that the trial court erred when it granted Hardeman's motion for summary judgment, denied her cross-motion, and ordered her to execute a transfer of title. We disagree.

On appeal from a grant of a motion for summary judgment, we review the evidence de novo, viewing it in the light most favorable to the nonmovant, to determine whether a genuine issue of fact remains and whether the moving party is entitled to judgment as a matter of law.[2]

Citing OCGA § 40-3-32 (d), Smith argues that her transfer of the motor home was not effective because she never transferred the vehicle's certificate of title to either Preferred RV or Hardeman. We disagree.

The Motor Vehicle Certificate of Title Act, OCGA § 40-3-1 et seq., is a recording statute whose purpose is "to perfect and give notice of security interests. . . . [T]his does not affect the *creation* of a property

---

[2] *Rubin v. Cello Corp.*, 235 Ga. App. 250 (510 SE2d 541) (1998).

or security interest, which remains a matter of contract between the parties."[3] The part of the Act on which Smith depends reads as follows:

> *Except as provided in Code Section 40-3-33 and as between the parties*, a transfer by an owner is not effective until this Code section and Code Section 40-3-33 have been complied with; and no purchaser or transferee shall acquire any right, title, or interest in and to a vehicle purchased by him unless and until he shall obtain from the transferor the certificate of title thereto, duly transferred in accordance with this Code section.[4]

For its part, OCGA § 40-3-33 (a) (1) provides that "[u]pon transferring the vehicle to another person other than by the creation of a security interest, [a] dealer shall promptly execute the assignment and warranty of title. . . ."

Here, the Smiths delivered the motor home to Preferred as their agent for purposes of selling the vehicle, and Preferred transferred "[that] vehicle to another person other than by the creation of a security interest."[5] As the Smiths' consignee and agent for a sale, Preferred "is not a third party within the meaning of [the Act]";[6] as a transaction involving a dealer, but not involving the transfer of a security interest, Preferred's delivery of the motor home to Hardeman fell within the exception included in OCGA § 40-3-32 (d) — that is, "as provided in [OCGA §] 40-3-33 and as between the parties."[7] Under its own terms, then, OCGA § 40-3-32's ban on a subsequent purchaser's taking of a vehicle's title without a certificate of title does not apply to this case, since "[a]s between the parties, an ownership may change hands without the necessity of transferring a title certificate by the seller and obtaining a new one in the name of the purchaser."[8]

Instead, whether Hardeman obtained title to the motor home is governed by the Uniform Commercial Code, which provides that "[a]ny entrusting of possession of goods to a merchant who deals in

---

[3] *State of Ga. v. Banks*, 215 Ga. App. 828, 831 (1) (452 SE2d 533) (1994) (citation and punctuation omitted; emphasis in original).

[4] OCGA § 40-3-32 (d) (emphasis supplied).

[5] OCGA § 40-3-33 (a) (1).

[6] *McDowell v. Owens*, 170 Ga. App. 421, 422 (317 SE2d 275) (1984); see also *Allen v. Holloway*, 119 Ga. App. 676, 677 (168 SE2d 196) (1969).

[7] OCGA § 40-3-32 (d).

[8] *Right Touch of Class v. Superior Bank*, 244 Ga. App. 473, 474 (1) (536 SE2d 181) (2000) (punctuation omitted), citing *McDowell*, supra; see also *Allen*, supra; *Canal Ins. Co. v. Woodard*, 121 Ga. App. 356, 358-359 (1) (173 SE2d 727) (1970).

goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business."[9] This is true "regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law."[10]

The fact that Preferred did not obtain a title certificate at the time of the consignment did not prevent it from transferring good title to Hardeman.[11] Pretermitting whether Preferred violated the consignment agreement when it sold the motor home to Hardeman without contacting the Smiths, the Smiths entrusted Preferred with the motor home, and in doing so bore the risk that Preferred would flee with the proceeds of any sale.[12] Thus we conclude that the trial court did not err when it granted summary judgment to Hardeman and ordered Smith to execute a transfer of the title certificate to Hardeman.[13]

2. Smith also argues that the trial court erred when it awarded Hardeman $14,226 in attorney fees spent on his defense and counterclaim. We agree in part.

OCGA § 40-3-32 (a) provides in relevant part:

> If an owner transfers his interest in a vehicle other than by the creation of a security interest, he shall, at the time of delivery of the vehicle, execute an assignment and warranty of title to the transferee . . . and cause the certificate and assignment to be delivered to the transferee. If the transferor willfully fails to deliver the properly assigned certificate of title to the transferee, the transferor shall be guilty of a misdemeanor. *In addition, the transferor shall be civilly liable to the transferee for all damages, including reasonable attorney's fees, occasioned by the transferor's failure to comply with this subsection.*[14]

[9] OCGA § 11-2-403 (2).

[10] OCGA § 11-2-403 (3).

[11] See *Mitchell Motors, Inc. v. Barnett*, 249 Ga. App. 639, 642 (1) (549 SE2d 445) (2001) (a true owner's right to rescind the transaction and recover the goods from a wrongdoer is cut off by a transaction to a good faith purchaser).

[12] See *Right Touch of Class*, supra, 244 Ga. App. at 475 (2); *Perimeter Ford v. Edwards*, 197 Ga. App. 747, 748-750 (399 SE2d 520) (1990).

[13] See *Right Touch of Class*, supra (affirming order to execute certificate of title in favor of buyer in ordinary course and to deliver certificate to purchaser's lienholder); *Mitchell Motors*, supra (affirming grant of summary judgment to buyer in ordinary course); *Perimeter Ford*, supra (same); *McDowell*, supra (affirming grant of summary judgment to purchaser of vehicle on consignment).

[14] (emphasis supplied).

Here, the Smiths refused to execute an assignment and warranty of title when Hardeman brought his counterclaim. The fact that they so refused because they had been defrauded by Preferred is immaterial to our determination that Hardeman may recover damages, including reasonable attorney fees, caused thereby.[15]

With his motion for summary judgment, however, Hardeman filed an affidavit avowing only that he had "incurred legal fees of $14,226." This affidavit does not explain or point to other evidence showing how this amount has been calculated, and the trial court made no finding that this amount, which it awarded as "damages," was compensation for reasonable attorney fees. Because OCGA § 40-3-32 (a) authorizes the recovery only of "reasonable" attorney fees, we vacate the trial court's award and remand the case for a rehearing.[16] "Upon remand[,] the court is directed to reconsider the award of attorney fees . . . , enter appropriate findings of fact, and enter a new judgment from which the losing party may appeal."[17]

*Judgment affirmed in part and vacated in part, and case remanded with direction. Ruffin, C. J., and Smith, P. J., concur.*

DECIDED AUGUST 31, 2006.

*E. Paul Stanley*, for appellant.
*Moore, Clarke, DuVall & Rodgers, David A. Garland*, for appellee.

---

[15] See *Right Touch of Class*, supra, 244 Ga. App. at 475 (3) (finding no error in trial court's award of damages to transferee when transferor has refused to transfer title).

[16] See, e.g., *McKemie v. City of Griffin*, 272 Ga. 843, 844-845 (4) (537 SE2d 66) (2000) (vacating fee award under OCGA § 9-15-14 and remanding for further proceedings where trial court had failed to make necessary and specific findings); *La Petite Academy v. Prescott*, 234 Ga. App. 32, 35 (2) (506 SE2d 183) (1998).

[17] *La Petite Academy*, supra (citation and punctuation omitted).