**FOURTH DIVISION**
**DILLARD, C.J.,**
**MERCIER and GOBEIL, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 14, 2019**

# In the Court of Appeals of Georgia

A18A2076. EXECUTIVE CARS, LLC v. WESTERN FUNDING, II, INC.

A19A0874. EXECUTIVE CARS, LLC v. WESTERN FUNDING, II, INC.

GOBEIL, Judge.

Western Funding II, Inc. sued Executive Cars, LLC in the Superior Court of Gwinnett County, asserting that it stood in the shoes of a good-faith buyer of a 2011 Toyota Camry to which Executive Cars held title. Western Funding, which was in possession of the Camry, sought a declaratory judgment that it retained a first priority lien in the car and an order requiring Executive Cars to transfer title to it. Claiming that the car had been stolen from its inventory, Executive Cars asserted counterclaims for conversion and trover and sought an order requiring Western Funding to return possession of the Camry to Executive Cars, as well as damages for loss of use and depreciation. Additionally, Executive Cars sought punitive damages and attorney

fees. The parties filed cross-motions for summary judgment, and the trial court granted Western Funding's motion and denied Executive Cars's motion. After Executive Cars appealed that order in Case No. A18A2076, the trial court granted Western Funding's motion for supersedeas and entered an order requiring Executive Cars to post a $10,000 supersedeas bond. Executive Cars appealed that order in Case No. A19A0874, and we consolidated the appeals.

In Case No. A18A2076, Executive Cars asserts that because the evidence showed that the Camry was stolen from it, the trial court erred both in granting summary judgment in favor of Western Funding and in denying Executive Cars's cross-motion for summary judgment. For reasons explained more fully below, we agree with Executive Cars and we therefore reverse the order of the trial court in Case No. A18A2076 and remand for entry of judgment in favor of Executive Cars. Additionally, we find that Executive Car's appeal from the order requiring it to post a supersedeas bond is mooted by resolution of the appeal in Case No. A18A2076. We therefore dismiss as moot the appeal in Case No. A19A0874.

Summary judgment is proper when the record discloses no genuine issue of material fact and, in light of the undisputed material facts, the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). "In reviewing a grant or denial of

2

summary judgment, we owe no deference to the trial court's ruling and we review de novo both the evidence and the trial court's legal conclusions. Moreover, we construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion." *Bryant v. Optima Int'l, Inc.*, 339 Ga. App. 696, 696 (792 SE2d 489) (2016) (citation and punctuation omitted).

The evidence of record is not in conflict and shows that Western Funding provides financing to automobile dealerships throughout the United States. Specifically, Western Funding purchases retail installment contracts and security agreements that dealerships enter into with customers who purchase a vehicle. Western Funding purchases these contracts at a discount, providing the dealership with cash and receiving both repayment of the full amount of the car loan and the interest charged thereon.

Executive Cars is a used car dealership located in Albany. On April 30, 2015, Executive Cars purchased the 2011 Toyota Camry at issue at a wholesale auction. Sometime in the month after Executive Cars took delivery of the Camry, that vehicle, together with four other cars, was stolen from Executive Cars's premises by Kabron Little, who had at times worked as an independent contractor for the dealership. All five of these cars were subsequently sold to third parties by another used car dealer

3

located in Albany, Good Lyfe Imports, Inc. Good Lyfe was managed by William Holt, who had previously operated a different used car dealership at the same physical location as Good Lyfe. Little had previously worked for Holt, and the two men were friends.

On June 9, 2015, after speaking with Holt over the telephone, Kaley Jordan Turner visited Good Lyfe and, working with Holt as her salesman, purchased the Camry for $15,025. Turner made a $1,700 down payment and financed the balance of the purchase price through a "Retail Installment Contract and Security Agreement" ("RISA") she entered with Good Lyfe. Pursuant to the terms of the RISA, Good Lyfe sold the RISA and assigned all of its rights thereunder to Western Funding, and the finance company thereby obtained a security interest in the Camry.

When she went to register the car and obtain a license plate, Turner learned that Good Lyfe did not hold title to the Camry. Turner called Holt about the issue, and he told her that he "was waiting on the bank," which Turner assumed meant that the dealership had not secured funding for her car loan. Turner based this assumption, in part, on the fact that at the direction of Holt, all of her payments under the RISA were made directly to Good Lyfe. Over the next several weeks, Turner continued to call Holt regularly to ask about her ability to register the car and after a few weeks, Holt

4

quit accepting her calls. Turner had been in possession of the Camry for less than three months when Holt appeared at her apartment, claimed that Turner was behind on payments, and repossessed the car on behalf of Western Funding.

In early October 2015, Executive Cars discovered that five vehicles, including the Camry and a 2008 Dodge Avenger, were missing from its on-site inventory. Upon making this discovery, Executive Cars's manager, Shawanda Hill, checked the online system that maintains the title and registration information for all vehicles registered in Georgia and discovered that three of the five missing vehicles (not including the Camry or the Avenger) had been sold at Good Lyfe. The fact that the sale of these vehicles appeared in the online database indicated that whomever had taken the cars had also stolen the cars' physical titles from Executive Cars. Hill instantly suspected Little of being involved in the thefts, as she knew that Holt was managing Good Lyfe and knew of Holt's and Little's professional and personal ties. Hill immediately contacted Little by text message, and he eventually admitted to stealing the three cars shown in the online registration system.[1] Little asked Hill and Executive Cars to

---

[1] Copies of the text messages exchanged by Hill and Little were attached to Hill's affidavit and submitted in support of Executive Cars's motion for summary judgment.

refrain from calling the police, telling them that he would be able to reimburse Executive Cars for the three vehicles within a few weeks.[2]

After speaking with Little, Hill contacted Holt to inquire about the three cars shown in the online registration system. Holt insisted that he did not know the vehicles were stolen, and claimed that he had purchased the vehicles from Little unaware that they belonged to Executive Cars. According to Holt, Little told him that he had purchased the cars himself at an auction. Holt agreed to provide Executive Cars with the paperwork evidencing his purchase of the cars from Little. Despite repeated requests from Executive Cars for such paperwork, however, Holt never provided any and he eventually quit taking Hill's calls.

Given that neither the Camry nor the Avenger was listed in the online registration system as having been sold by Good Lyfe, and because Executive Cars was still in possession of the physical titles to those vehicles, the dealership was unsure as to whether Little had also stolen them. Sometime between October 2015 and January 2016, however, an individual who had purchased the Avenger from Good Lyfe contacted Executive Cars after discovering that Executive Cars held title to the vehicle. During that same time frame, Western Funding contacted Executive

---

[2] There is no evidence that Little ever paid Executive Cars for any of the five vehicles he stole.

Cars and demanded title to the Camry, at which point Executive Cars learned that Little had also stolen the Camry and delivered it to Good Lyfe. On January 21, 2016, Executive Cars reported to the police the theft of the five vehicles taken by Little. The police report reflects that as of January 2016, Good Lyfe was no longer in business.

When Executive Cars refused to transfer title to the Camry to Western Funding, that company initiated the lawsuit giving rise to these appeals.

*Case No. A18A2076*

In Case No. A18A2076, Executive Cars appeals both the trial court's grant of summary judgment in favor of Western Funding on its claim for title to the Camry and the denial of Executive Cars's motion for summary judgment on its claims for trover and conversion. At issue in this appeal is the application of OCGA § 11-2-403, which is identical to § 2-403 of the Uniform Commercial Code adopted throughout the United States. That statute provides, in relevant part:

> (1) A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though: (a) The transferor was deceived as to the identity of the purchaser; or (b)

The delivery was in exchange for a check which is later dishonored; or

(c) It was agreed that the transaction was to be a "cash sale"; or

(d) The delivery was procured through fraud punishable as larcenous under the criminal law. (2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business. (3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.

OCGA § 11-2-403.

1. The trial court concluded that Western Funding was entitled to summary judgment under OCGA § 11-2-403 (1), finding that Executive Cars (acting through Little, as its agent) transferred the Camry to Good Lyfe, thereby providing it with a voidable title. Thus, when Good Lyfe transferred its voidable title to Turner, as a good faith purchaser for value, Turner became vested with a valid title, which prevailed over the title held by Executive Cars. Alternatively, the court found that Western Funding was entitled to summary judgment under OCGA § 11-2-403 (2) and (3) because Executive Cars (again acting through Little, as its agent) entrusted Good Lyfe with the Camry and thereby empowered Good Lyfe to transfer Executive Cars's

8

title to Turner. As Executive Cars points out, however, these legal conclusions are not supported by either the facts of record or the applicable law.

As the statutory language reflects, both the concepts of "voidable title" and "entrustment" assume knowledge and voluntary conduct on the part of the property's true owner. Specifically, under the language of § 403 (1), the concept of voidable title covers factual situations where the rightful owner intended to sell or transfer the property in question. Such situations include those where the person taking from the true owner misrepresented his identity, provided a bad check or otherwise failed to pay for the purchase, or fraudulently induced the owner to enter into the sale. OCGA § 11-2-403 (1) (a)-(d). Under those circumstances, the purchaser receives a "voidable title" to the property that, once transferred to a "good faith purchaser for value," becomes good title. See *Stein v. GEICO Indem. Ins. Co.*, 289 Ga. App. 739 (658 SE2d 153) (2003); *Mitchell Motors v. Barnett*, 249 Ga. App. 639, 641-642 (1) (549 SE2d 445) (2001); *Charles Evans BMW v. Williams*, 196 Ga. App. 230, 231-232 (1) (395 SE2d 650) (1990).

The appropriate application of the voidable title doctrine is demonstrated by *Stein*. In that case, the owner of a Corvette traded in that car when he purchased a new vehicle, surrendering the Corvette based on the car dealer's promise to pay off the

9

loan on that car. 289 Ga. App. at 739. After the check sent to pay off the loan was dishonored by the bank, the Corvette's owner reported the car stolen and received payment from his insurance company. Id. The insurer learned that the car dealer had sold the Corvette to Stein and sued Stein, seeking to recover the car. Id. The trial court held in favor of the insurer and this Court reversed, holding that the car dealer had a voidable title under OCGA § 11-2-403 (1) that became a good title when transferred to Stein, as a good faith purchaser for value. Id. at 741. We explained that the voidable title doctrine

> attempts to reconcile the rights of a 'true owner' who was fraudulently induced to transfer title in goods to a 'wrongdoer' with the rights of an innocent purchaser from the wrongdoer. Title in the wrongdoer is 'voidable' because the true owner is entitled to rescind the transaction and recover the goods from that individual. The right of rescission is cut off, however, by a transaction to a 'good faith purchaser.'

Id. (citation and punctuation omitted).

As the foregoing demonstrates, the voidable title doctrine places the burden of loss on the property's true owner, who participated in the transaction that led to the good faith purchaser receiving the property. Thus, in situations involving a voidable title, a property owner may only seek recovery against the wrongdoer – i.e., he may not seek to recover his property from one who purchased from the wrongdoer in good

10

faith. Id. See also *Mitchell Motors*, 249 Ga. App. at 641-642 (1) (dealer who purchased a Jeep from another car dealer under a "transaction of purchase" but failed to pay for the vehicle, obtained a voidable title, which became a good title upon sale of the Jeep to a good faith purchaser for value); *Charles Evans BMW*, 196 Ga. App. at 231-232 (1) (car owner who "delivered his car under a transaction of purchase procured by the perpetration of a criminal fraud whereby he was deceived as to the identity of the purchaser who gave him a check which was later dishonored," conveyed voidable title to the wrongdoer and the wrongdoer "had the power to transfer good title to a good faith purchaser for value").

Like the concept of voidable title, the doctrine of entrustment also assumes knowledge and voluntary action on the part of the property's true owner. See *Sunnyland Employees' Fed. Credit Union v. Fort Wayne Mortgage Co.*, 182 Ga. App. 5, 6 (354 SE2d 645) (1987) (physical precedent only) (noting that we have interpreted OCGA § 11-2-403 (2) and (3) as applying only where the property's owner has entrusted the property to another); *Locke v. Arabi Grain & Elevator Co.*, 197 Ga. App. 854, 855 (399 SE2d 705) (1990) (physical precedent only) (entrustment involves "acquiescence by the owner of goods in the retention of those goods" by a merchant known to sell that type of property) (citation omitted). A property owner

11

entrusts his property when he either affirmatively delivers that property to a "merchant who deals in goods of that kind" or where he knowingly acquiesces in that merchant's retention of his property. See *Smith v. Hardeman*, 281 Ga. App. 402, 404-405 (1) (636 SE2d 106) (2006) (owners of a motor home entrusted that property when they consigned the motor home to a dealer to sell on their behalf; when dealer sold the motor home but failed to pay the owners in compliance with the consignment contract, the owners had no recourse against the good faith purchaser for value); *Perez-Medina v. First Team Auction*, 206 Ga. App. 719, 721-722 (2) (426 SE2d 397) (1992) (owner of tractor entrusted tractor to merchant when he allowed merchant to retain the tractor for four months for the purpose of installing additional equipment thereon; after merchant sold the tractor without the owner's permission, the owner had no recourse against the good-faith buyer). Thus, as with voidable title, entrustment places the burden of loss on the true owner, who knowingly and voluntarily delivered his property to the custody of a merchant dealing in that type of property. See *Hardeman*, 281 Ga. App. at 405 (1) (a property owner who entrusts his property to a merchant dealing in such property "[bears] the risk that [the merchant] [will] flee with the proceeds of any sale") (footnote omitted); *Locke*, 197 Ga. App. at 856 ("[t]he general thrust of the cases involving 'entrusting' of goods to a dealer is

aimed at the protection of the purchaser, where the latter acts in 'good faith' and the owner takes the risk by placing or leaving his chattel with a merchant of his own choosing who could convert or otherwise misdeal it") (citation and punctuation omitted). Accordingly, where the merchant subsequently sells the property without the owner's consent or defrauds the owner of the proceeds of the sale, the owner's remedy is limited "to seeking recovery for the value of the goods from the merchant." *Locke*, 197 Ga. App. at 855 (citation and punctuation omitted).

Given that both voidable title and entrustment turn on whether the property's owner was aware of and consented to the transfer or entrustment of its property, Executive Cars challenges the trial court's legal conclusion that Little's theft of the Camry did not prevent him from providing voidable title to Good Lyfe and/or entrusting that car to Good Lyfe – i.e., its holding that a good faith purchaser for value can take title to stolen property.[3] Specifically, Executive Cars argues that where property has been stolen, its true owner can neither know of nor consent to its transfer or entrustment, and therefore OCGA § 11-2-403 cannot apply. We agree.

---

[3] The trial court expressly found (and the parties do not dispute) that Little stole the Camry from Executive Cars.

13

Even after adopting the UCC,[4] Georgia has continued to apply the common law rule that the "sale of stolen goods does not divest the person from whom [the goods] were stolen" of his title. *Rohatensky v. Woodall*, 257 Ga. App. 801, 802 (2) (572 SE2d 354) (2002) (noting that the doctrine of entrustment would not apply if a property owner could prove that his car had been stolen). See also *First Nat'l Bank of Cobb County v. Nat'l Dealer Serv., Inc.*, 155 Ga. App. 384, 385 (1) (270 SE2d 911) (1980) (title to stolen car remained with the true owner, even though the person in possession was a good faith purchaser for value). Instead of applying this law, however, the trial court relied on the statutory language providing that an entrustment occurs under OCGA § 11-2-403 "regardless of whether *the procurement of the entrusting or the possessor's disposition of* the goods have been such as to be larcenous under the criminal law." OCGA § 11-2-403 (3) (emphasis supplied). The trial court concluded, without any citation to relevant legal authority, that pursuant to this language, "[s]tolen goods are considered larcenous under the voidable title doctrine, falling within OCGA § 11-2-403."

Not only does the trial court's legal conclusion conflict with the common law principle set forth above, it also ignores this Court's previous holding in *Charles*

---

[4] This adoption occurred in 1962. See OCGA § 11-1-101.

*Evans BMW*. There, we found that the language relied on by the trial court in this case does *not* bring stolen property within the ambit of OCGA § 11-2-403. 196 Ga. App. at 232 (1). We reasoned that there was a distinction between criminal fraud (which was the criminal conduct referenced by the statute) and theft (which was criminal conduct not covered by the statute). To support that distinction, we relied on the statute's use of the words "delivery" and "purchase," noting that under the UCC, "[d]elivery concerns a *voluntary transfer* of possession, (OCGA § 11-1-201 (14)), and purchase refers to a *voluntary transaction* creating an interest in property (OCGA § 11-1-201 (32))." Id. (citation and punctuation omitted; emphasis supplied). In short, we implicitly acknowledged that under the plain language of OCGA § 11-2-403, no transfer or entrustment could occur without the knowledge and consent of the property's true owner. Thus, we concluded that while "a swindler" who fraudulently induces an owner to voluntarily deliver his property is "a purchaser" under OCGA § 11-2-403, a thief who wrongfully takes property without the owner's knowledge is not.[5] Id. (Citation and punctuation omitted).

---

[5] Our holding in *Charles Evans BMW* is in accord with a number of other jurisdictions that have been presented with the question of whether one in possession of stolen goods can assert the defense of voidable title or entrustment under § 403. Each of those jurisdictions has concluded that such a defense is not available, even to a good faith purchaser for value. See *Great Am. Ins. Co. v. Nextday Network Hardware Corp.*, 73 FSupp 3d 636, 641-642 (II) (D. Md. 2014) (where an

To conclude that despite his status as a thief, Little could transfer voidable title to or entrust the Camry, the trial court not only failed to apply the relevant law, it also found that as a "salesman" at Executive Cars, Little "had apparent authority to sell all vehicles in the inventory of Executive Cars, including the vehicle at issue in this case." Executive Cars also challenges this factual finding on appeal, and we agree that the finding is unsupported by any evidence.

As an initial matter, we note that the record fails to show that Little was an employee of Executive Cars, as opposed to an independent contractor. Nor does the record show that any work Little did for Executive Cars involved the buying or selling of vehicles, and thus there was no evidence showing that Little worked as a

"entrusting" party has stolen the property at issue "he had only void title and therefore had no rights in the goods to transfer to the merchant, who then could not lawfully transfer any rights to the buyer"); *Blackwell Motors v. Manheim Serv. Corp.*, 529 SW3d 367, 375-376 (Mo. Ct. App. 2017) (a thief does not even obtain voidable title; instead, "a thief's title to stolen property is void") (citation and punctuation omitted); *Alamo Rent-A-Car v. Mendenhall*, 937 P2d 69, 73 (Nev. 1997) (rejecting a defense of voidable title and holding "[t]he owner of stolen goods is not divested of title therein by the theft, and even though an innocent subsequent purchaser may be treated as having title as against everyone but the rightful owner, a sale by the thief does not vest title in the purchaser as against the owner") (citation and punctuation omitted); *Butler v. Buick Motor Co.*, 813 SW2d 454, 457-458 (Tenn. App. 1991) (rejecting the argument that a thief acquired voidable title and holding that the party from whom the automobile was stolen was entitled to possession of the same); *Marvin v. Connelly*, 252 SE2d 562, 563 (S.C. 1979) (because "[t]he concept of 'voidable title,' . . . turns on whether the original owner assented to the transfer" of the property, a thief cannot obtain voidable title).

16

salesman for the dealership. More importantly, however, the trial court's finding as to apparent agency ignores the fact that "a finding of apparent agency cannot be based upon the assumption that an agency relationship exists." *Capital Color Printing v. Ahern*, 291 Ga. App. 101, 109 (2) (661 SE2d 578) (2008) (citation and punctuation omitted). Instead, "[a]pparent authority is that which *the principal's conduct* leads a third party reasonably to believe the agent has; it creates an estoppel allowing third parties to bind a principal to the agent's acts *on account of the principal's conduct, reasonably construed by third parties acting in innocent reliance* thereon." *R. W. Holdco., Inc. v. Johnson*, 267 Ga. App. 859, 864 (1) (a) (601 SE2d 177) (2004) (citation and punctuation omitted; emphasis supplied). Thus, "[a]ny manifestations of implied agency or apparent authority arising only through the words or acts of the purported agent are insufficient to authorize a finding" of agency. *McKean v. GGNSC Atlanta, LLC*, 329 Ga. App. 507, 510 (1) (a) (765 SE2d 681) (2014) (citation and punctuation omitted).

To prove that Little was acting as the agent of Executive Cars, therefore, Western Funding was required to come forward with some evidence of conduct by Executive Cars on which Holt could have reasonably relied to conclude that Little was acting as the dealership's agent in providing Good Lyfe with cars (either by

17

selling those cars to Good Lyfe or by placing them on consignment). Western Funding, however, presented no such evidence. Furthermore, the evidence of record supports the opposite inference – i.e., that Holt was aware that Little was not acting with the authority of Executive Cars. Despite receiving title to three of the cars listing Executive Cars as the owner, Holt never contacted the dealership to obtain a transfer of title. And ignoring the fact that the cars were titled in Executive Cars's name, Holt told Executive Cars he believed that Little had purchased the cars for himself, at an auction. Moreover, after being contacted by Executive Cars, Holt steadfastly refused to provide that dealership with paperwork evidencing the alleged sale of those three cars to Good Lyfe by Little.[6] Additionally, Holt affirmatively misled Turner about Good Lyfe's ability to obtain title to the Camry, never contacted Executive Cars to ask about transferring title to that car, and eventually began actively avoiding Turner's inquiries about the title. The logical inference to be drawn from this evidence is that Holt did not believe Little was authorized by Executive Cars either to sell the cars or place them for sale with Good Lyfe.[7]

---

[6] Thus, there is no evidence supporting the trial court's finding that Little sold any of the five stolen cars to Good Lyfe.

[7] Notably, Western Funding did not present an affidavit from either Holt or Little to support its claims of voidable title and/or entrustment.

18

Here, as a thief, Little could neither grant Good Lyfe voidable title to the Camry nor entrust the Camry to Good Lyfe to sell on Executive Cars's behalf. In light of this law, and given the absence of any evidence showing that Little was an agent of Executive Cars, the trial court erred in finding that Western Funding was entitled to summary judgment under OCGA § 11-2-403.

2. Based on its finding that the Camry had been entrusted to Good Lyfe under OCGA § 11-2-403 (2) and (3), the trial court found that Executive Cars could not assert any claims against Western Funding. Executive Cars challenges this ruling, and argues that the trial court erred in denying its motion for summary judgment on its claims for trover and conversion. We agree. Under our holding in Division 1, Executive Cars can recover on its claims against Western Funding. See *Williams v. Nat'l Auto Sales*, 287 Ga. App. 283, 285 (1) (651 SE2d 194) (2007); *First Nat'l Bank of Cobb County*, 155 Ga. App. at 385 (1). The question, therefore, is whether the evidence shows that Executive Cars is entitled to judgment on its trover and conversion claims as a matter of law.

Under Georgia law, the true owner of personal property may sue in trover seeking possession of that property from "one who has converted such property to his own use." *Thomas Mote Trucking v. PCL Civil Constructors*, 246 Ga. App. 306, 309

19

(3) (540 SE2d 261) (2000) (citation and punctuation omitted). To prevail on such a claim, the property owner must come forward with evidence showing that: "(1) it has title to the property or a right of possession; and (2) the defendant was in possession of the property when the action was brought and, in its answer, denied that the plaintiff had title to, or the right to possess, the property." Id. (citations omitted). See also OCGA § 44-12-150 ("[i]n actions to recover the possession of chattels, it shall not be necessary to prove any conversion of the property if the defendant is in possession when the action is brought"). Additionally, in cases where it appears that a defendant has come into possession of a plaintiff's property lawfully, a plaintiff may prove conversion of that property by showing: "(1) title to the property or the right of possession[;] (2) actual possession in the other party[;] (3) demand for return of the property[;] and (4) refusal by the other party to return the property." *Bo Phillips Co. v. R. L. King Properties, LLC*, 336 Ga. App. 705, 707 (1) (783 SE2d 445) (2016) (citation and punctuation omitted). See also *Williams*, 287 Ga. App. at 285 (1) (a party who has lawfully come into possession of another's property converts that property when he refuses the owner's demand for return of the same).

Here, the undisputed evidence shows that Executive Cars holds title to the Camry; that at the time Executive Cars asserted its counterclaims, Western Funding

20

was in possession of the Camry; that before Executive Cars asserted its counterclaims, it demanded the return of the Camry; that Western Funding refused to return the Camry to Executive Cars; and that in its complaint, Western Funding denied that Executive Cars was entitled to possession of the Camry. Given that Western Funding has not challenged this evidence, Executive Cars is entitled to summary judgment on its counterclaims for trover and conversion, and we therefore reverse the trial court's denial of Executive Cars's motion for summary judgment. On remand, the trial court shall hold a hearing to determine whether Executive Cars is entitled to compensatory relief other than possession of the Camry (e.g., monetary damages for depreciation and/or loss of use of the car) and to address Executive Cars's claims for punitive damages and attorney fees. The trial court shall thereafter enter judgment in favor of Executive Cars, awarding it possession of the Camry and any other appropriate relief.

*Case No. A19A0874*

3. In Case No. A19A0874, Executive Cars appeals the trial court's order granting Western Funding's motion for supersedeas bond during the pendency of the appeal in Case No. A18A2076 and setting the bond amount at $10,000. Given our resolution of the appeal in Case No. A18A2076, we dismiss as moot the appeal in this

21

case challenging the propriety and the amount of the supersedeas bond. See *McCann v. McCraine*, 228 Ga. 817 (188 SE2d 487) (1972); *GOM Builders, LLC v. Renasant Bank*, 328 Ga. App. 796 (762 SE2d 622) (2014).

For the reasons set forth above, we reverse the order of the trial court in Case No. A18A2076 granting summary judgment in favor of Western Funding and remand for entry of judgment in favor Executive Cars. We dismiss as moot the appeal in Case No. A19A0874.

*Judgment reversed and case remanded with direction in Case No. A18A2076. Appeal dismissed as moot in Case No. A19A0874. Dillard, C. J., concurs. Mercier, J., concurs in judgment only.* *

**\*   THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2(a)**